**Archibald E. ROBERTS, Appellant,**

**v.**

**Cyrus R. VANCE, Secretary of the Army, et al., Appellees.**

**No. 17801.**

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 16, 1964.

Decided June 18, 1964.

Petition for Rehearing or, in the Alternative, for Amendment of Opinion Denied Oct. 30, 1964.

Mr. Oliver Gasch, Washington, D. C., with whom Messrs. G. Bowdoin Craig-

hill and Caesar L. Aiello, Washington, D. C., were on the brief, for appellant.

Mr. Gerald A. Messerman, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., Frank Q. Nebeker and Joseph M. Hannon, Asst. U. S. Attys., were on the brief, for appellees.

Mr. Monroe H. Freedman, Washington, D. C., filed a brief on behalf of American Civil Liberties Union, as amicus curiae, urging reversal.

Before BAZELON, Chief Judge, and DANAHER and BURGER, Circuit Judges.

BAZELON, Chief Judge.

The appellant is an Army reserve officer with 18 years and 9 months of active federal service. The Secretary of the Army personally ordered him released from active duty after Major Roberts delivered an unauthorized speech to the Daughters of the American Revolution criticizing prominent public officials.[1] Claiming that this action would cause him to lose substantial sums of retirement pay,[2] Major Roberts sought a declaratory judgment and injunctive relief to have the Secretary's order set aside. On cross-motions for summary judgment, the District Court granted defendant's motion and denied plaintiff's. Major Roberts then brought this appeal.

The Secretary claims plenary authority, under 10 U.S.C. § 681 (1958), to personally effect Roberts' release:

> "Except as otherwise provided in this Title, the Secretary concerned may at any time release a Reserve under his jurisdiction from active duty."

Roberts contends, however, that certain procedural safeguards which he was denied are "otherwise provided" in Title 10 and regulations thereunder and by the due process clause of the Constitution. Since we agree that these safeguards are provided by law we set aside the Secretary's action without reaching any questions arising from the due process clause.[3]

1. The release order assigned no reasons. These were supplied in an affidavit by General Underwood, Deputy Chief of Information, United States Army, which was introduced by the Government in support of its motion for summary judgment below. According to the affidavit, Major Roberts had a history of difficulties with the Army. While on the staff of General Edwin Walker, Roberts had participated in the "pro-Blue" troop information program. Later, while on another assignment, Roberts circulated literature attacking the Army's treatment of General Walker as part of a hidden campaign by unnamed individuals in the Pentagon, supported by the civilian heads of the Army, "to wreck all genuine anti-Communist activities within the Armed Forces of the United States." After investigation, the Army reassigned Roberts, without prejudice, because of "personal actions which placed him at variance with established positions of the Department of the Army."

On February 14, 1962, Major Roberts submitted for clearance a speech entitled "Is Pro-Blue Troop Training Un-American" which he proposed to give before the national convention of the Daughters of the American Revolution on April 19. On April 14, he was notified that the speech could not be cleared "for reasons of impropriety." Major Roberts submitted no further material for clearance. Instead he delivered another speech, also not cleared in which he criticized Assistant Secretary of State G. Mennen Williams and stated that Mayor Samuel Yorty of Los Angeles had a Communist background.

In the investigation which followed, Major Roberts was afforded the opportunity to present evidence, but was not granted a hearing. After considering the alternatives of court-martial, less-than-honorable discharge, and release from active duty, and after submitting the problem to senior Army officials for study, the Secretary chose release.

2. The complaint alleges that but for the release, Major Roberts would have qualified for retirement under AR 635–130 at age 48 (after 20 years of active federal service) rather than at age 60.

The complaint further recites the loss of medical care to the plaintiff and his family, loss of quartermaster and PX privileges, and loss of housing and travel privileges.

3. Nor do we reach any of the first amendment questions raised by appellant and briefed by the *amicus curiae*.

By Army Regulation 135–173, entitled *Reserve Components: Relief of Officers and Warrant Officers from Active Duty,* the Secretary has prescribed procedures governing exercise of his authority under § 681. In addition to sections prescribing involuntary release from active duty upon completion of maximum periods of service, attainment of maximum age, failure of promotion, etc., Section XV of AR 135–173 establishes the procedures to be followed in releasing "those officers whose degree of efficiency and manner of performance of duty require relief from active duty or elimination from the service." Following annual screening of records at Headquarters, Department of of the Army, to determine which officers fall into this category,

> "The chief of arms and services, Headquarters, Department of the Army, will forward, without recommendation, to the Department of the Army Active Duty Board, or other designated board, the records of officers to be considered within the annually prescribed guidance and criteria. Cases of officers selected by the board for release and elimination will be considered for processing under A.R. 140–175 or NGR 20–6, immediately following their release from active duty." [§ XV.-50.a][4]

Thus to release a reserve officer from active duty on grounds other than maximum age or period of service, failure of promotion, etc., the Secretary must observe the two-step procedure outlined in

§ XV: (1) screening by Headquarters, followed by (2) Active Duty Board review.

By express Congressional direction reserve officers within two years of qualifying for military retirement benefits are afforded special protection. In 1956 Congress provided lump sum readjustment payments for members of reserve components who were involuntarily released before they were eligible for retirement benefits,[5] in order to "guarant[ee] to the reservist that if he remains on active duty for a number of years and is then involuntarily released, he will be assured of some percentage of economic security during his readjustment to civilian life." [6] At the same time Congress recognized in subd. (d) of the readjustment payment statute that reservists within two years of qualifying for retirement benefits (chiefly 18-year reservists) not only deserved compensation in the event of release, but should be protected against release at all:

> "Under regulations to be prescribed by the Secretary concerned, which shall be as uniform as practicable, a member of a reserve component who is on active duty and is within two years of becoming eligible for retired pay or retainer pay under a purely military retirement system, may not be involuntarily released from that duty before he becomes eligible for that pay, unless his release is approved by the Secretary." [10 U.S.C. § 1163(d) (Supp. IV 1959–62)][7]

---

4. AR 140–175 and NGR 20–6 govern separation from the service (e. g., discharge) of reserve officers not on active duty.

5. 70 Stat. 517 (1956), as amended, 10 U.S.C. §§ 687, 1163(d) (Supp. IV 1959–62).

6. H.R.REP. No. 1960, 84th Cong., 2d Sess., 2 (1956) ; see also S.REP. No. 2288, 84th Cong., 2d Sess. (1956), U.S.Code Cong. and Adm.News 1956, p. 3061.

7. See *Subcommittee Hearing on H.R. 6725 and H.R. 1516,* House Committee on Armed Services, Subcommittee No. 1, 84th Cong., 1st Sess. 4529, 4532, 4535,

4537, 4550, 4564, 4577, 4585, 4587 (July 13, 1955). Defense Department spokesmen told legislators that retention of 18-year reservists until completion of 20 years of service is service policy. That Congress intended to codify this policy is shown by the House Report's explanation of the fact that readjustment payments are computed on the basis of $\frac{1}{2}$ months pay for each year served *only up to 18:*

> "another section of the bill provides that a member of a Reserve component who is on active duty and is within 2 years of qualifying for retirement pay shall not be involuntarily sepa-

The Secretary has implemented this statute, as directed by providing in AR 135–173 that secretarial approval is required before an 18-year reservist can even be processed:

"Individuals who are within 2 years of qualifying for retirement under AR 635–130 on scheduled release date will not be processed under this section, unless such action is approved by the Secretary of the Army." [§ XV.50.d]

▇▇ In sum, release of Major Roberts required (1) secretarial approval of processing under § XV, (2) screening by Headquarters, (3) review by the Army Active Duty Board, and (4) final approval by the Secretary;[8] but his release was effected solely on the basis of step (4). We ·think the Secretary was required to observe his own regulations. Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L. Ed.2d 1012 (1959); Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). And he was not relieved from this requirement by the provision of AR 135–173 that "exceptions to these regulations may be authorized on an individual basis by Headquarters, Department of the Army."[10]

No such authorization, or explicit reasons to justify one, are set forth in the record before us. In light of the 18-year reservist's special status, we will not assume that the Secretary authorized an exception *sub silentio.*

▇▇ But the Secretary urges that AR 135–173 is not the exclusive method of releasing 18-year reservists from active duty. We are told that 10 U.S.C. § 1163 (d)'s prohibition against releasing such men without secretarial approval implies that such approval is sufficient for release. Thus, it is argued, § 1163(d) protects the 18-year reservist by requiring the Secretary personally to authorize release rather than allowing him to delegate his authority under § 681. But § 1163(d) specifically directs the Secretary to promulgate regulations to implement the 18-year reservist's enhanced status. Since we have been shown no other regulation on the subject, we must conclude that § XV.50.d, AR 135–173, governs.

More important, perhaps, is the fact that § XV limits the Secretary's power to release officers who have not served 18 years, by providing for review of their cases at two levels. The question therefore arises whether a single, personal decision by the Secretary provides greater protection than a two-board screening.

rated from active duty before he qualifies for that pay."
H.R.Rep. No. 1960, *supra,* at 1. And see S.Rep. No. 2288, *supra,* at 3. See also note 8, *infra.*

Congress' concern for the 18-year reservist was reaffirmed in the 1962 recodification of Title 10 United States Code, when the 18-year reservist provision was detached from the readjustment payment provisions [see former 50 U.S.C. § 1016 (1958)] and put under 10 U.S.C. § 1163, which deals with limitations on the power to *separate* members of reserve components.

8. This comports with the view communicated to Congress by spokesmen for the Department of Defense:

"Colonel Benade. Well, there are several methods, sir, by which a man can be released between his 18th and 20th year. Of course, as a result of court-martial, that can happen at any

phase of a man's service. Otherwise, there are several other administrative methods by which an individual can be released. But I would like to remind the committee, if I may, that the bill provides a safeguard that such an individual not be released without the personal approval of the Secretary of the Department concerned.

\* \* \* \* \*

"Continuing now as to the methods which might be followed, \* \* \* if his performance is substandard and does not measure up and is of such low caliber that the Departments feel that the officer should be released from service, then a board would screen the records of the individual and would make a recommendation for his retention or for his release, as the case might be."

House Hearings, *supra,* at 4585.

10. § I.1.b.

We think Congress' special concern for the 18-year reservist requires us to avoid such speculation and to hold that it intended secretarial approval *in addition to* the safeguards accorded reserve officers generally.

It follows that the Secretary's action was invalid and the District Court's order granting his motion for summary judgment must be reversed. The Court's order denying appellant's motion for summary judgment is set aside and the case is remanded to the District Court to consider this motion in the light of this opinion, and to conduct such further proceedings as may be necessary to determine the extent of the relief required.[11]

BURGER, Circuit Judge (concurring).

The record in this case reflects summary action following appellant's plain violation of military regulations as to advance clearance for speeches given by an officer. We have no occasion to reach the basic decision of the Secretary to separate appellant from active duty; our concern is only with procedures. But the very purpose of all procedures is to insure that decisions are reached only after calm and orderly deliberation. To require the Secretary to accomplish the separation of an 18 year officer strictly in accord with the Secretary's own regulations does not impose an undue hardship. On the contrary it serves the important purpose of guaranteeing that action will not be taken in haste or under the impact of some unusual episode such as arose here.

---

11. The complaint prays for the following relief:

"1. For an order declaring that the action taken by defendants is unlawful, null and void and of no force and effect whatsoever.

"2. For an order directing defendants * * * to restore plaintiff to the status which he occupied in the United States Army prior to the unlawful action heretofore set forth, with all of the rights, privileges and emoluments to which he would have been entitled but for the unlawful and invalid orders heretofore complained of.

"3. For an order permanently enjoining defendants * * * from refusing or failing permanently to restore plaintiff to the status which he enjoyed prior to the unlawful action complained of, including promotion to the rank of Lieutenant Colonel, for which he had been officially selected, as reported in Army Circular 624–3, dated 26 January 1962.

"4. For such other and further relief as to the Court may seem proper." See Meador, *Judicial Determinations of Military Status*, 72 YALE L.J. 1293 (1963). *Cf.* Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959) ; Greene v. United States, 376 U.S. 149, 84 S.Ct. 615, 11 L.Ed.2d 576 (1964).