Gregory **ALBERICO**, Appellant,

v.

The **UNITED STATES**, Appellee.

Appeal No. 85–1988.

United States Court of Appeals,
Federal Circuit.

Feb. 10, 1986.

Alan C. Friedberg, Pendleton & Sabian, P.C., Denver, Colo., for appellant.

Robert G. Giertz, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., for appellee; with him on brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Thomas W. Petersen, Asst. Director and Michael T. Paul, LtC. Joyce E. Peters, Maj. Thomas R. Folk and Delbert Bauldock, Office of the Judge Advocate General, Dept. of the Army, Washington, D.C., of counsel.

Before FRIEDMAN, BENNETT and BISSELL, Circuit Judges.

## DECISION

BENNETT, Circuit Judge.

Appellant Gregory Alberico appeals from the December 28, 1984 decision of the United States Claims Court (Kozinski, C.J.), reported in 7 Cl.Ct. 165 (1984), denying his request for (1) a declaratory judgment that his release from active duty in the United States Army was invalid, (2) an order correcting his military records to reflect his retirement in the grade of captain, and (3) for retirement pay and benefits. We affirm.

## BACKGROUND

Gregory Alberico, a captain in the United States Army Reserve was indicted by a federal grand jury in Colorado on August 12, 1977. He was charged with several felony counts, including the theft of approximately 375 pounds of high explosives which he had sold to FBI agents posing as terrorists.

On September 20, 1977, Alberico's commanding officer barred him from the base where he was stationed on the grounds that his continued presence constituted "a clear and present danger" to security. Concurrently, the Army took steps to relieve Alberico from active duty pursuant to Army Regulation (AR) 635–100. This regulation provided that a Reserve officer could be released from active duty upon conviction of certain civilian offenses, but only after an Army Active Duty Board had considered the case.

On November 18, 1977, Alberico applied for voluntary retirement as an officer under 10 U.S.C. § 3911 (1982) [1] effective January 19, 1978. Upon realizing that the

---

1. Section 3911 provides in part: "The Secretary of the Army may, upon an officer's request, retire a regular or reserve commissioned officer of the Army who has at least 20 years of service computed under section 3926 of this title, at least 10 years of which have been active service as a commissioned officer."

release process could not be effected before Alberico completed 10 years of active commissioned service on January 14, 1978, the Army began drafting an amendment to AR 635–100 that would enable the Secretary of the Army to relieve him on a more expedited basis. Under the new amendment, a convicted Reserve officer would be denied the opportunity for procedural notice and hearing afforded to Regular Army officers.

On December 13, 1977, Alberico was convicted in the United States District Court for the District of Colorado for theft of three government checks totaling $73,000, theft of a cash register, possession of two checks stolen from the mail, conspiracy to steal and sell, and theft of military plastic explosives. He was sentenced to 20 years in prison and fined $44,000.[2]

The amendment to AR 635–100 was implemented on January 11, 1978, and Alberico was released from active duty, less than three days before he would have become eligible to retire.

In March 1978, Alberico filed an application with the Army Board for the Correction of Military Records (ABCMR) requesting that his involuntary release be expunged and that his application for retirement under 10 U.S.C. § 3911 be granted. The ABCMR denied his requested relief on April 13, 1979.

Alberico filed suit in the Claims Court on December 5, 1983, claiming that the January 1978 amendment to AR 635–100 and its application to him violated, *inter alia*, Army regulations and the due process, ex post facto, and bill of attainder clauses of the United States Constitution. Further, he alleged that the ABCMR acted arbitrarily, capriciously, and contrary to law in denying his application.

On December 28, 1984, the Claims Court entered summary judgment in favor of the United States. *Alberico v. United States*, 7 Cl.Ct. 165 (1984). The court rejected Alberico's claim that his release was invalid

because it allegedly violated a Department of Defense policy of equal treatment of Reserves and Regulars. The court noted that Alberico was unable to point to any violation of a specific provision of a statute or regulation in which the purported policy was embodied. *Id.* at 168. The parties did not cite 10 U.S.C. § 277 (1982) as arguably applicable, but even so we think that it would not be in the particular circumstances of this case. The Claims Court also rejected Alberico's claim that his release violated due process because (1) his release was based upon a criminal conviction, which afforded him the "very finest procedural protections our system of justice can offer," (2) the release following his conviction deprived him of no "liberty" or "property" interest, (3) he had a hearing before the ABCMR as to other issues arising from the Secretary's decision, and (4) he had no constitutional entitlement to the procedures in AR 635–100 as they existed prior to its January 1978 amendment. The court also rejected Alberico's contention that the January 1978 amendment to AR 635–100 was a bill of attainder, finding that it was a provision of general applicability which did not inflict punishment without a judicial trial. *Id.* at 169–70. Finally, the Claims Court ruled that the amendment and its application to Alberico did not constitute an ex post facto law because there was an important nonpunitive purpose being furthered, that is, the prompt removal from the Army's rolls of convicted criminals who could not provide or be trusted to perform further services. *Id.* at 170–71.

## OPINION

### I

 Alberico contends that his release from active duty under the January 1978 amendment to AR 635–100 deprived him of due process. Specifically, Alberico claims that the status of a Reserve officer within two years of retirement is a protected property right. We find this contention meritless.

---

**2.** The U.S. Court of Appeals for the Tenth Circuit affirmed Alberico's conviction on August 24, 1979. *United States v. Alberico*, 604 F.2d 1315 (10th Cir.1979).

The Claims Court held that Alberico had no property interest in his position as a Reserve officer on active duty. 7 Cl.Ct. at 169. Alberico argues, however, that the Claims Court ignored 10 U.S.C. § 1163(d) which provides that "a member of a reserve component who is on active duty and is within two years of becoming eligible for retired pay ... may not be involuntarily released from that duty before he becomes eligible for that pay, unless his release is approved by the Secretary [of the Army]." In support of this argument, Alberico cites *Roberts v. Vance,* 343 F.2d 236 (D.C.Cir. 1964), where the release from active duty of an Army Reserve officer with over 18 years of service was invalidated.

We first note that the court in *Roberts* did not "reach any question arising from the due process clause." 343 F.2d at 237. Section 1163(d) creates only an entitlement to action under regulations prescribed by the Secretary of the Army and approved by him. It does not grant, nor does it purport to grant, any property rights to a Reserve officer with over 18 years' service.

Second, although the Secretary's release of the Reservist in *Roberts* was found to be improper, it was because the Secretary failed to follow his own regulations. Such is not the case here. On January 11, 1978, the Secretary of the Army directed Alberico's release from active duty pursuant to the newly added paragraph 3–58g of AR 635–100.[3] Thus, Alberico's reliance on *Roberts* is misplaced.

We fail to see how Alberico's release from active duty deprived him of any property interest whatsoever. Section 1162(a) of title 10 provides that "reserve commissioned officers may be discharged at the pleasure of the President." Additionally,

section 681 of title 10 allows the Secretary of the Army to release a Reservist at any time. In light of these provisions, we are forced to conclude that Reserve officers such as Alberico have no reasonable expectations of continued employment and thus no property interests protected by the due process clause. *See Sims v. Fox,* 505 F.2d 857, 861 (5th Cir.1974), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 678 (1975). To hold otherwise would run the prohibited risk of interfering in internal Army affairs. *See Orloff v. Willoughby,* 345 U.S. 83, 93–94, 73 S.Ct. 534, 539–40, 97 L.Ed. 842 (1953). The amendment to AR 635–100 only deprived Alberico of prior review by the Army Active Duty Board before the Secretary of the Army acted on his case. At best, Alberico's interest in remaining on active duty was a mere expectancy, and therefore not entitled to protection as a property right. *See Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

Assuming, arguendo, that we accepted Alberico's contention that his release from active duty implicated a property interest, we would have to conclude that he was afforded full due process. Once a property interest is shown, all due process requires is notice and an opportunity to be heard. *Cleveland Board of Education v. Loudermill,* —— U.S. ——, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985).

The Claims Court found that "[t]he criminal process afforded Alberico the very finest procedural protections our system of justice can offer." 7 Ct.Cl. at 169–70. The record shows that Alberico was placed on notice of the charges against him when he received his commanding offi-

---

**3.** This paragraph provides:

Notwithstanding the above provisions, an officer who is found guilty, or action is taken which is tantamount to a finding of guilty, by any Federal or State court may be released by the Secretary of the Army from active duty immediately when the offense:

"(1) Is punishable under the Uniform Code of Military Justice by a maximum penalty of death or confinement for one year or more.

. . .

(2) Involves moral turpitude, regardless of the sentence received or maximum punishment permissible under any code. The release of officers under this provision who have completed 18 or more years of active federal service on the date the officer is found guilty, must be approved by the Secretary of the Army. If the finding of guilty is subsequently set aside, the officer may with his/her consent and the approval of the Secretary of the Army, be returned to active duty."

cer's letter of September 20, 1978. Prior to his release from active duty, he received a criminal trial which established that he committed six felonies, all affecting his capacity to perform his duties and his trustworthiness as an Army officer. After his release, Alberico was afforded a full hearing before the ABCMR, at which he was represented by legal counsel.[4] For us to require more than this would amount to an unwarranted intrusion into the Army's interest in quickly releasing convicted felons from active duty. Assuming that *Loudermill* is even applicable in a military setting, it is apparent that Alberico received the required due process.

## II

Alberico has also challenged the January 1978 amendment to AR 635–100 as being an unconstitutional bill of attainder or ex post facto law. Thus, the basic question to be determined on this aspect of the case is whether the amendment and its application to Alberico constituted additional punishment for his crimes. After careful review of the record, we are of the opinion that the newly added paragraph to AR 635–100 does not impose additional punishment, but merely provides the Army with a means of removing from its ranks undesirable officers who have committed serious crimes.

 We note that the amendment was not, as Alberico claims, directed specifically at him, although it was certainly inspired by his case. Specificity alone, however, even if present is not enough to invoke the bill of attainder clause. *Nixon v. Administrator of General Services,* 433 U.S. 425, 471–72, 97 S.Ct. 2777, 2804–05, 53 L.Ed.2d 867 (1977). The amendment simply corrected an inconsistency in the previous regulation. Both before and after the amendment, Alberico was subject to release from active duty for his misconduct. Before the regulation was changed, a Reserve officer convicted by a court martial of a serious offense could be sentenced to dismissal and

then immediately released from active duty pending appellate review. A Reserve officer convicted by a civilian court, on the other hand, could not be sentenced to dismissal and would remain on active duty pending subsequent elimination proceedings. Thus, we find that the amendment to AR 635–100 was simply a general policy change to eliminate a serious inconsistency in Army regulations. It was an exercise of the Army's legitimate regulatory power to purge its ranks of convicted felons and not a purpose to add to Alberico's punishment.

We further note that the amendment to the regulation does not involve any of the several punishments the Supreme Court has noted as being historically associated with bills of attainder. *See Selective Service System v. Minnesota Public Service Research Group,* 464 U.S. 1006, 104 S.Ct. 522, 78 L.Ed.2d 707 (1984).

In addition, we conclude that the amendment to AR 635–100 was not an ex post facto law. Alberico is complaining about a change in procedure, not a change having retroactive substantive effect. A procedural change in a law does not necessarily violate the ex post facto clause of the Constitution. *See Chilcott v. Orr,* 747 F.2d 29, 34 (1st Cir.1984), citing *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), and *Thompson v. Missouri,* 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204 (1898).

## III

 Alberico also argues that Department of Defense policy mandated equal treatment of Regular and Reserve Army officers. Nothing in the record, however, convinces us that such a policy is embodied in any statute or regulation applicable here. As the Claims Court pointed out, even if such a policy of equal treatment existed, it would not have jurisdiction unless there was a statute, regulation, or constitutional provision conferring a substantive right of recovery. 7 Cl.Ct. at 168, citing *United*

---

**4.** Failure to provide a hearing before, rather than after, termination of a property interest is not in and of itself violative of due process. *See*

*Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).

*States v. Connolly,* 716 F.2d 882, 885 (Fed. Cir.1983).

Finally, Alberico claims the ABCMR erred in failing to give "due consideration" to legal and constitutional issues raised by him. He has, however, failed to meet his burden of showing that the ABCMR's decision was arbitrary, capricious, unsupported by substantial evidence, or contrary to law. *Guy v. United States,* 608 F.2d 867, 870 (Ct.Cl.1979). He has not shown harmful error in the board's failure to consider his arguments. *See, e.g., Handy v. U.S. Postal Service,* 754 F.2d 335, 337–38 (Fed.Cir. 1985).

Accordingly, after thorough consideration of the parties' submissions and after oral argument, the judgment of the United States Claims Court is affirmed.

AFFIRMED.

BISSELL, Circuit Judge, concurring.

I concur in the result.

I cannot join the majority opinion because I am not persuaded that Alberico, as a reserve officer within two years of retirement, could have "no reasonable expectations of continued employment and thus no property interests protected by the due process clause." The Supreme Court has explained its holding about protected property interests:

> We have made clear in *Roth* [408 U.S.] at 571–572 [92 S.Ct. at 2705–06], that "property" interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, "property" denotes a broad range of interests that are secured by "existing rules or understandings." *Id.,* at 577 [92 S.Ct. at 2709.] A person's interest in a benefit is a "property" interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing. *Ibid.*

*Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

The record reveals that by a letter dated February 24, 1976, Alberico was offered "an extension of service beyond 20 years active Federal service to complete 10 years active Federal commissioned service." He was offered the opportunity to be "retained on active duty in a commissioned status until you have completed 10 years active Federal commissioned service." There was only this restriction on the offer: "This extension will be subject to the policy restrictions relative to promotion and other minimum standards of performance of duty." In notifying Alberico of the proposed action, his commanding officer referred to that restriction, stating that

> your manner of performance has not been consistent with the conditions prescribed upon your acceptance of the tender of retention on active duty beyond the completion of 20 years active Federal service. On 14 May 1977 when you accepted such offer of retention on active duty, you acknowledged and agreed that your continuation on active duty was subject to your "maintaining satisfactory standards." The manner of your recent performance clearly indicates that you have failed to meet this condition.

App. 10–166.

In forwarding the proposal to the next command level, Alberico's commander stated that the basis of the proposal was "the manner of CPT Alberico's performance." He wrote that Alberico's "manner of performance has not been consistent with the conditions prescribed upon his acceptance of the tender of retention on active duty." App. 10–030,031. The endorsement forwarding the proposal to Headquarters, Department of the Army, likewise recognized that his "extension is conditional in that it is subject to his maintaining and meeting promotion and minimum standards of performance. His recent performance of duty does not constitute compliance with these conditions." App. 10–168. In light of this evidence in the record I cannot agree that Alberico's interest in remaining on active duty was a "mere expectancy." Even if the Army could have chosen to release Alberico for no reason at all, by electing to

release him for cause other considerations are implicated. *See Vitarelli v. Seaton,* 359 U.S. 535, 539, 79 S.Ct. 968, 972, 3 L.Ed.2d 1012 (1959) (civilian employee who could have been summarily discharged by Secretary of the Interior at any time without the giving of a reason was entitled to specified procedural protections when Secretary gratuitously decided to give a reason). "While the [Army] may elect not to confer a property interest in [a retention on active duty], it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." *Cleveland Board of Education v. Loudermill,* — U.S. —, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985) (quoting *Arnett v. Kennedy,* 416 U.S. 134, 167, 94 S.Ct. 1633, 1650–51, 40 L.Ed.2d 15 (1974) (Powell, J., concurring in part and concurring in result in part)).

Yet, I concur in the result because assuming, without deciding, that his interest was a protected property interest, I agree that he was afforded his due process rights. Regrettably, I cannot join that part of the majority opinion's section I because it misstates the law in two respects.

First, contrary to footnote 4, the "[f]ailure to provide a hearing before, rather than after, termination of a property interest" certainly would be "violative of due process." That is the very issue addressed in *Cleveland Board of Education v. Loudermill,* — U.S. —, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). Even though Loudermill was entitled to a full post-termination hearing, the Court said that "[t]he only question is what steps were required *before* the termination took effect." *Loudermill,* 105 S.Ct. at 1495 (emphasis added). The Supreme Court "described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest.' *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (emphasis in original)." *Loudermill,* 105 S.Ct. at 1493 (footnote omitted).

Second, contrary to the majority, the criminal trial did not satisfy the due process hearing requirement with respect to the administrative action. The criminal trial was an entirely collateral proceeding which focused on whether Alberico was guilty of the felony charges, not on whether, because of his conduct, he should be released from active duty. The Army's administrative decision to release Alberico from active duty was an exercise of its discretion. That is, even though Alberico had been declared guilty and had been sentenced by the civilian court, the military authorities could have chosen not to release him. Relating to dismissals for cause, the Supreme Court has expressed that

[e]ven where the facts are clear, the appropriateness or necessity of the discharge may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decisionmaker is likely to be before the termination takes effect....[8]

---

[8] ... The point is that where there is an entitlement, a prior hearing facilitates the consideration of whether a permissible course of action is also an appropriate one.

*Loudermill,* 105 S.Ct. at 1494 & n. 8. The Court emphasized that "the right to a hearing does not depend on a demonstration of certain success." *Id.,* at 1494.

Rather, I am convinced that Alberico was afforded his due process rights because the record reveals that he received the "essential requirements" of due process, "written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Loudermill,* 105 S.Ct. at 1495.

By a letter dated September 20, 1977, Alberico's commanding officer notified him of the commanding officer's intention to recommend that he be involuntarily released from active duty. This letter informed Alberico of the charges against him, explained the evidence, and offered him the opportunity to "submit any statements in rebuttal or comments pertaining to this action." App. 10–167. And Alberico did respond. On September 30, 1977,

the commanding officer forwarded through command channels his request that Alberico be released. He "enclosed CPT Alberico's response by counsel with his request." App. 10–014. Thus it appears that Alberico had the opportunity to invoke the discretion of the decisionmaker before his release took effect. The fact that he was not successful is beside the point. I am satisfied that he was provided "a meaningfull hedge against erroneous action." *Loudermill,* 105 S.Ct. at 1494 n. 8 (quoting *Goss v. Lopez,* 419 U.S. 565, 583, 95 S.Ct. 729, 740, 42 L.Ed.2d 725 (1975) ).

It is on that basis that I concur in the result.