909 F.2d 1496
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Don B. EDISON, Richard L. Slyder, Paul A. Polski and John F.
Gamboa, Plaintiffs-Appellants,
v.
The UNITED STATES, Defendant-Appellee.
 No. 90-5039.
 United States Court of Appeals, Federal Circuit.
 July 26, 1990.
 
 Before RICH, Circuit Judge, COWEN, Senior Circuit Judge, and PAULINE NEWMAN, Circuit Judge.
 DECISION
 COWEN, Senior Circuit Judge.
 
 
 1
 Appellants claim that they were illegally discharged from the Army Reserves upon their appointment to the United States Naval Academy (Naval Academy). They applied to the Army Board for the Correction of Military Records (ABCMR) to have their records corrected to show that they were not discharged from their reserve components while serving as midshipmen in order to establish dual credit, both as members of the reserves and as midshipmen, for pay purposes during that service. The ABCMR denied relief upon the basis of a Department of Defense regulation and the United States Claims Court in Edison v. United States, 18 Cl.Ct. 362 (1989), upheld the decision of the ABCMR. We affirm, but on different grounds.
 
 OPINION
 
 2
 * Appellants, who were enlisted members of Army Reserve Components, were appointed to the Naval Academy between January 1, 1953, and June 25, 1956. Upon appointment to the Academy, each of the appellants was discharged from his Army Reserve Component and after graduation,[1] each served on active duty in various Armed Forces of the United States. In 1984, they sought to have their records corrected to reflect continued service in their respective reserve components while at the Naval Academy. The ABCMR denied their applications on the basis of DOD Directive 1300.4 (May 3, 1954), which provided that members of reserve components of the Armed Forces were to be discharged upon their appointment to any of the service academies.
 
 
 3
 During the period of time in issue, January 21, 1953, through June 25, 1956, a number of enlisted members of reserve components of the Armed Forces, other than Army Reserve Components, were also discharged upon their appointment to the Naval Academy. Upon the applications of approximately 200 of these reservists, the Navy Board for the Correction of Military Records and the Air Force Board for the Correction of Military Records, recommended that their records be corrected in accordance with 10 U.S.C. Sec. 1552 to reflect continued reserve status until they were appointed as officers in the Armed Forces.
 
 
 4
 The remedial action of the two Boards was based primarily on a 1962 decision of the Comptroller General, In Re Brown, 41 Comp.Gen. 578 (1962), involving a member of the Naval Reserve who entered the Naval Academy between January 21, 1953, and June 25, 1956. The opinion recognizes that the Naval Reserve Act of 1938, ch. 690, Sec. 4, 52 stat. 1175, which prohibited naval reservists from being members of any other military organization, was repealed by the Armed Forces Reserve Act of 1952, Pub.L. No. 82-476, 66 stat. 481, effective January 1, 1953. This prohibitory provision was not reinstated until the enactment of an Act of June 25, 1956, Pub.L. No. 84-614, Sec. 1, 70 stat. 333 (codified as amended at 10 U.S.C. Sec. 971), which became effective with respect to appointments made to one of the academies after June 25, 1956. Consequently, the Comptroller General held that those reservists who were appointed to the academy after January 1, 1953, but before June 25, 1956, were entitled to be credited for pay purposes with their dual status as reservists and midshipment during their period of service in the academy.
 
 
 5
 The Comptroller General's decision made no reference to DOD Directive 1300.4. A decision of June 10, 1982, No. 8140-81, by the Board for the Correction of Naval Records, stated that "there is no indication that the Board was aware of DOD Directive 1300.4 prior to March, 1982." However, since relief was previously approved for other persons similarly situated, the Board held that considerations of basic equity and fairness dictated that the same favorable recommendation should be issued in behalf of those who applied after the Board had knowledge of DOD Directive 1300.4. The record contains a copy of a decision by the Air Force Board for Correction of Military Records dated September 1, 1981, which makes no reference to DOD Directive 1300.4.
 
 II
 
 6
 Appellants' major contention in this appeal is that there is virtually no distinction between appellants and 200 of their classmates at the Naval Academy, who were discharged from their reserve components when appointed to the Naval Academy during the period from January 1, 1953, through June 25, 1956, except that appellants were in the Army Reserve, rather than in other reserve components. Consequently, appellants argue that the failure of the ABCMR to grant them the same relief which was accorded to the 200 classmates, pursuant to 10 U.S.C. Sec. 1552, clearly discriminated against them in violation of the provisions of 10 U.S.C. Sec. 277, which provides that "laws applying to both regulars and reserves, shall be administered without discrimination--(1) among Regulars; (2) among Reserves; (3) between Regulars and Reserves." (Emphasis added).
 
 
 7
 The ABCMR upheld appellants' discharges in reliance on DOD Directive 1300.4. Clearly, appellants have not shown that their discharges were illegal because the regulation is in conflict with 10 U.S.C. Sec. 277. Section 277 concerns laws "applying to both regulars and reserves." By its terms, the regulation plainly applied to reservists only and is not within the purview of 10 U.S.C. Sec. 277.
 
 
 8
 The fact that the decision of the ABCMR did not accord appellants fair and equal treatment does not alone entitle them to recover. They must establish that their discharges were based on pure legal error, such as the violation of a statute, regulation or constitutional provision conferring a substantive right of recovery. Alberico v. United States, 783 F.2d 1024, 1028 (Fed.Cir.1986); Grieg v. United States, 640 F.2d 1261, 1265 (Ct.Cl.1981). Appellants have failed to discharge their burden of proof.
 
 III
 
 9
 Appellants' second argument is that the discharges from their reserve components upon appointment to the Naval Academy is in conflict with the provisions of the Universal Training and Service Act of 1951, Pub.L. No. 82-51, 65 stat. 75. We find no support for this position, either in the language of the statute or in the legislative history.
 
 
 10
 Plaintiffs rely on that portion of the Act which provides that any person who is enlisted in the Armed Forces, including a reserve component thereof, prior to obtaining the age of 26 years, "shall be required to serve on active training and service in the Armed Forces or in training in the National Security Training Corps, and in a reserve component, for a total period of eight years, unless sooner discharged on the grounds of personal hardship...." 65 stat. at 79 (codified at 50 U.S.C. app. Sec. 454(d)(3)). The legislative history shows that the purpose of the Act was to establish a trained pool of members of reserve components "to provide a continuing, permanent, always available Reserve ready to meet any emergency that might arise." H.R.Rep. No. 271, 82d Cong., 1st Sess., reprinted in 1951 U.S.Code Cong. & Admin.News 1472, 1478. Obviously, while they are attending the Naval Academy, midshipmen are not in a position to be a part of the Army Reserve manpower pool.
 
 
 11
 The decision of the ABCMR relied on Section 248 of the Armed Forces Reserve Act of 1952, which provided:
 
 
 12
 Subject to the provisions of this Act, the discharge of commissioned officers of the reserve components shall be effected at the pleasure of the President, and the discharge of other members of the reserve components shall be in accordance with regulations promulgated by the appropriate Secretary.
 
 
 13
 Congress thereby granted the Secretary express authority for the issuance of DOD Directive 1300.4. Accordingly, we conclude that the Universal Training and Service Act did not prohibit the discharge of appellants from their reserve components when they were appointed to the Naval Academy.
 
 IV
 
 14
 The Court feels that the disparate treatment accorded to appellants by the Army Board for the Correction of Military Records was both discriminatory and inequitable. However, we have concluded that under the facts of this case, the Claims Court is not empowered to grant the relief sought by the appellants. See Skinner v. United States, 594 F.2d 824, 830 (Ct.Cl.1979) (Military boards have wide latitude to correct an injustice or unfairness, in contrast to the court's narrow scope of review). Under these circumstances, we believe that the only remedy available to appellants is through a private bill, enacted by Congress or referred to the Claims Court pursuant to 28 U.S.C. Sec. 1492.
 
 
 
 [1]
 Edison attended the Naval Academy for about 2 1/2 years, and completed R.O.T.C. at Georgetown University on September 2, 1960