**Donald L. WAGNER, Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 03–5118.

United States Court of Appeals, Federal Circuit.

April 28, 2004.

Matthew S. Freedus, Feldesman Tucker Leifer Fidell LLP, of Washington, DC, argued for plaintiff-appellant. With him on the brief were Eugene R. Fidell and Todd A. Wynkoop.

Brent M. McBurney, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; and Bryant G. Snee, Assistant Director. Of counsel on the brief was Captain Steven D. Bryant, Litigation Division, United States Army Legal Services Agency, of Arlington, Virginia.

Before MAYER, Chief Judge, GAJARSA, and DYK, Circuit Judges.

GAJARSA, Circuit Judge.

Donald L. Wagner ("Wagner") appeals from the judgment of the United States Court of Federal Claims, which held that the decision of the Army Board for Correction of Military Records ("ABCMR") was not arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *Wagner v. United States*, 56 Fed. Cl. 634 (2003). The ABCMR explained that, although Mr. Wagner's discharge violated Army Regulation ("AR") 600–8–24 ¶ 2–31(h), any resulting error was harmless. Because we are unable to ascertain whether the Army's violation of its regulation was harmless, we reverse and remand.

## I. BACKGROUND

Wagner was an officer in the United States Army Reserve. In June of 1995, he was arraigned, tried, and convicted by court-martial of making a false official statement and of conduct unbecoming an officer. He was sentenced to a punitive reprimand and forfeiture of $1000 per month, but was not discharged. On July 9, 1996, the Army notified Wagner that the Department of the Army Active Duty Board ("DAADB") intended to consider him for release from active duty on account of the court-martial. At the time he was notified, the Army Reserve Personnel Center listed January 10, 1997, as the date Wagner would achieve eighteen years of active federal service.

The Army provides the procedure for involuntarily releasing reserve component officers from active duty in AR 600–8–24. Where involuntary release proceedings under AR 600–8–24 involve an officer who will have more than eighteen years of active federal service on the date scheduled for release from active duty, the regulation requires pre-approval of the proceedings by the Secretary of the Army. *See* AR 600–8–24, 2–31(h) ("An officer who will complete 18 or more years of [active federal service] on his or her scheduled release date will not be processed under this section, unless such action is approved by the Secretary of the Army."); *see also* 10 U.S.C. § 12686. The July 9 notice from the Army Reserve Command to Wagner informing him of the pending DAADB proceedings indicated that he would be processed under the discharge procedures applying to officers with less than eighteen

years of active federal service. At the time the Army Reserve Command sent the notice, it believed Wagner would achieve eighteen years of active federal service on January 10, 1997.

On August 22, 1996, Wagner filed a request with the Army Reserves Personnel Center ("Personnel Center") to update his records to reflect an additional fifty-three days of active federal service. His request was granted and, on November 12, 1996, the Personnel Center notified Wagner that he had achieved eighteen years of active federal service as of that day. The Personnel Center did not, however, notify the individual processing the pending DAADB action against Wagner. Consequently, separation proceedings continued. On December 9, 1996, the DAADB recommended that Wagner be released from active duty for misconduct or moral or professional dereliction with an "Under Other than Honorable Conditions" characterization of service. The Principal Deputy Assistant Secretary of the Army approved the DAADB's recommendation, as required by AR 600–8–24, ¶ 2–31(k), on December 16, 1996. The Personnel Center notified Wagner of the DAADB decision on December 19.

After notifying Wagner of the DAADB decision, the Army learned that Wagner had achieved eighteen years of active federal service prior to the DAADB's decision and that the approval of the Secretary of the Army had been required under AR 600–8–24, 2–31(h), prior to processing Wagner. In an attempt to rectify the problem, the Army belatedly sought approval from the Assistant Secretary of the Army for Manpower and Reserve Affairs to discharge Wagner from active duty. On January 20, 1998, the Acting Assistant Secretary retroactively approved Wagner's

release from active duty. Wagner was officially released on April 16, 1998.

Wagner sought correction of his military records from the ABCMR on April 28, 2000. The ABCMR is a statutory review board composed of civilians for the purpose of correcting errors in the official records of military personnel. 10 U.S.C. § 1552; AR 15–185, ¶¶ 2–1, 2–2. The ABCMR may order the correction of the records of military personnel if the applicant proves the existence of an error or injustice by a preponderance of the evidence. AR 15–185 ¶ 2–9.

Before the ABCMR, Wagner argued that, because the DAADB did not obtain prior approval from the Secretary as required by AR 600–8–24 ¶ 2–31(h), his release from active duty was contrary to law, arbitrary, and capricious. As relief for the procedural error, Wagner requested that the decision of the DAADB be set aside and that he be reinstated to active duty with all the back pay and benefits to which reinstatement would entitle him.[1] The ABCMR denied Wagner's request, stating that it believed that "the Secretary of the Army would have initially authorized elimination proceedings regardless of the applicant's years of service . . . ."

Following the ABCMR decision, Wagner filed a motion for judgment on the agency record in the Court of Federal Claims, seeking monetary relief for back pay and allowances under 37 U.S.C. § 204 ("Pay and Allowances of the Uniformed Services"). The Army filed a cross-motion, also for judgment on the agency record. The Court of Federal Claims accepted the ABCMR's finding that Wagner's discharge violated AR 600–8–24 by not obtaining prior approval from the Secretary. The court further found that, although the

---

1. Wagner sought relief in the ABCMR on April 28, 2000. Wagner's date of release from active duty was April 16, 1998. Rein- statement of Wagner by the ABCMR would have given Wagner twenty years of active federal service.

ABCMR failed to substantiate its conclusion that the Secretary would have authorized the proceeding, Mr. Wagner had failed to carry his burden of showing clearly and convincingly that the ABCMR's decision was arbitrary, capricious, contrary to law or regulation, or unsupported by substantial evidence.

The Court of Federal Claims premised its decision on three justifications. First, although the ABCMR provided no support for its conclusion that the Secretary would have approved Wagner's discharge, the court found that the retroactive endorsement of the proceeding by the Acting Assistant Secretary was "strong evidence" that the Secretary would have approved Mr. Wagner's discharge proceedings if asked beforehand as required by regulation. Second, a senior Army legal advisor believed that the post-proceeding approval by the Acting Assistant Secretary cured any procedural error resulting from the failure to follow the regulation. Finally, the court disagreed with Wagner that the ABCMR's conclusion was based on pure speculation over what the Secretary would have done if the regulation had been followed, as the post-proceeding approval by the Acting Assistant Secretary supported the ABCMR's conclusion. Accordingly, the Court of Federal Claims denied Wagner's motion and granted the Army's cross-motion for judgment on the agency record. We have jurisdiction of this appeal pursuant to 28 U.S.C. § 1295(a)(3).

## II. DISCUSSION

### A. *Standard of Review*

 The Court of Federal Claims applies the same standard in deciding a motion for judgment on the agency record as it would in deciding a motion for summary judgment. *Rose v. United States*, 35 Fed. Cl. 510, 512 (1996). Therefore, judgment on the agency record is only appropriate when there are no issues of material fact and when one party is entitled to judgment as a matter of law. *Id.; see also Banknote Corp. of Am. v. United States*, No. 03–5104, —— F.3d —— (Fed.Cir. April 26, 2004). We review such decisions by the Court of Federal Claims without deference, applying the same standard of review that the Court of Federal Claims applied. Accordingly, we will not disturb the decision of the corrections board unless it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *Haselrig v. United States*, 333 F.3d 1354, 1355 (Fed.Cir.2003).

### B. *Analysis*

 We begin with the initial premise that an agency is bound by its own regulations. *Service v. Dulles*, 354 U.S. 363, 388, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); *see also Carmichael v. United States*, 298 F.3d 1367, 1373–74 (Fed.Cir.2002); *Voge v. United States*, 844 F.2d 776, 779 (Fed.Cir. 1988) ("It has long been established that government officials must follow their own regulations, even if they were not compelled to have them at all...."). In *Service*, the Supreme Court reversed the Secretary of State's exercise of his statutorily authorized discretion to dismiss employees with questionable loyalty where the Secretary had exercised that authority in violation of self-imposed regulatory constraints in excess of statutory requirements. 354 U.S. at 388, 77 S.Ct. 1152. The decision in *Service* requiring an agency to comply with its self-imposed regulations, however, does not end our inquiry, as strict compliance with procedural requirements is not required where the error is deemed harmless. *See Gratehouse v. United States*, 206 Ct.Cl. 288, 512 F.2d 1104, 1108 (1975) ("Exceptions are made to the rule [of *Service v. Dulles* ] where the procedural error is deemed harmless."); *see also Carmichael*, 298 F.3d at 1375–76 (remanding for a determination on whether the Navy would

have discharged a serviceman even if it had followed proper procedures); *Sargisson v. United States*, 913 F.2d 918, 922–23 (Fed.Cir.1990) (finding harmless error in a procedural violation where there was no risk of prejudice to the serviceman due to the violation).

■ Our decisions regarding harmless error and civilian correction boards consist of two lines of cases, clearly summarized by this court's opinion in *Porter v. United States*, 163 F.3d 1304 (Fed.Cir.1998). The first line of cases involves substantive errors contained in a serviceman's military record, and explains that a civilian correction board should review the impact of errors in a military record on a serviceman's failure to be promoted for harmless error.[2] *See Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804, 817 (1979); *Engels v. United States*, 230 Ct.Cl. 465, 678 F.2d 173 (1982); *see also Porter*, 163 F.3d at 1315–17. Sanders was an Air Force officer whose military records contained inaccurate Officer Effectiveness Reports and, consequently, was twice passed over for promotion and discharged. When the correction board denied Sanders' request for correction of his records and reinstatement with back pay, Sanders sought relief in the Court of Claims. The Court of Claims explained that the correction board did not need to order his reinstatement if it determined that the error in his military records was harmless, i.e., that "substantial evidence show[ed] that it was unlikely that the officer would have been promoted in any event." *Sanders*, 594 F.2d at 818.

In *Engels*, the Court of Claims again endorsed harmless error review for erroneous service records. Geoffrey Engels, like Sanders, was an officer in the Air Force when he was twice passed over for promotion by selection boards. *Engels*,

678 F.2d at 174. The Court of Claims described a two-step process for review. *Id.* at 175. First, the officer must show the existence of legal error. *Id.* Second, the officer must demonstrate a prima facie showing of a causal nexus between the error and the result reached. *Id.* Applying this test itself, the Court of Claims found that Engels had successfully demonstrated that the error in his records was not harmless and ordered his reinstatement. *Id.* at 180.

The second line of cases involves procedural errors regarding the composition of military selection boards and holds that, in these instances, harmless error review is inapplicable. *See Doyle v. United States*, 220 Ct.Cl. 285, 599 F.2d 984 (1979); *Evensen v. United States*, 228 Ct.Cl. 207, 654 F.2d 68 (1981); *see also Porter*, 163 F.3d at 1317. The discharged Army reserve officers in *Doyle* asserted not an error with their military records, but a flaw in the composition of the board constituted to evaluate their records for promotion purposes. *Doyle*, 599 F.2d at 988. By statute, promotion boards were required to have a certain number of Reserve officers when making promotion decisions regarding other Reserve officers. The promotion boards that passed over the reserve officers in *Doyle* contained no reserve officers. When the civilian correction board rejected as harmless the faulty promotion board composition and, consequently, the officers' requests to have the passover decisions purged from their records and to be reconsidered for promotion, the officers sought relief in the Court of Claims. Unlike *Sanders*, however, the Court of Claims rejected the idea that a civilian correction board could review a defect in promotion board composition for harmless error and

2. We recognize that the application of harmless error review by the civilian correction boards to the situation described in *Sanders* was eliminated with the decision in *Porter*, 163 F.3d at 1324.

required reinstatement and reconsideration of the officers' records. *Id.* at 995–96.

The Court of Claims in *Evensen v. United States* also ordered reinstatement of an officer in the United States Army due to defective composition of a review board. 654 F.2d at 75. Ronald Evensen was passed over twice for promotion, once in 1976 and again in 1977. He sought and received correction of his records and review by a Standby Advisory Board ("STAB"), which declined to recommend him on the corrected record. *Id.* at 70. The STAB, however, consisted of five officers, all of whom had been on the 1977 review board that refused to recommend promotion for Evensen. *Id.* Because, by statute, officers were precluded from serving on consecutive boards reviewing the record of the same candidate for promotion, the Court of Claims, citing *Doyle,* voided the passover decision and ordered backpay and retirement benefits to Evensen. *Id.* at 72.

Our decisions on harmless error review and civilian review boards do not stray significantly from the circumstances present in these two lines of cases, and the situation here does not neatly match the facts of either. Wagner urges us to find that this situation falls within the *Doyle* line of cases, and that the procedural error was per se harmful. The Government naturally disagrees, and argues that, before we may exclude this error from the purview of harmless error review, we must find that the error is "fundamental." In making this assertion, the Government cites the Court of Claims in *Doyle,* which described the error in that case as "penetrat[ing] to the heart of the process Congress deemed necessary for fair judgment in selecting officers for promotion." *Doyle,* 599 F.2d at 1003; *see also Porter,* 163 F.3d at 1319 ("Instances of fundamental error, at least those affecting the composition of the deciding body, are not susceptible to review under the harmless error test.").

The passage from *Doyle* quoted by the Government is the conclusion of the Court of Claims based on the situation before it, which, as explained, does not exactly apply to this case. The reasoning underlying the court's conclusion, however, is instructive. The court in *Doyle* articulated two justifications for refusing to apply the harmless error rule: (1) avoiding the erosion of essential components of a fair trial; and (2) the inability of a reviewing body to assess the magnitude of the error. *Doyle,* 599 F.2d at 995. In *Evensen,* the Court of Claims reaffirmed the importance of the second justification, explaining that in cases where the effect of the error is incapable of evaluation, harmless error review is inappropriate. 654 F.2d at 72. The court in *Evensen* also explained that fundamental errors are not limited to statutory procedural error, but may also result from violations of regulations and even internal operating procedures. *See id.* at 71.

The Supreme Court has drawn similar distinctions to those reflected in our *Sanders* and *Doyle* case lines. In *Arizona v. Fulminante,* the Court explained,

The common thread connecting these [harmless error] cases is that each involved "trial error"—error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt.

499 U.S. 279, 307–08, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Like the erroneous Officer Effectiveness Reports in *Sanders,* the impact of these "trial errors" could be assessed by an independent reviewing body. In contrast, the Court described

the cases in which it rejected harmless error review as those involving "structural defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards." *Id.* at 309, 111 S.Ct. 1246. Again, like the defective board compositions in *Doyle,* the effect of these errors is not quantifiable and is therefore incapable of review.

Beginning with the first justification premised by the Court of Claims in *Doyle* for not engaging in harmless error review, the essentiality of the Secretary's preapproval to the overall scheme of the involuntary release procedures of AR 600–8–24 is unclear. On one hand, although the Secretary's approval is required by statute, 10 U.S.C. § 12686(a), it is required only before the *release* of a reserve component officer. The statute does not require approval prior to the commencement of DAADB proceedings, although the regulations do. As explained, however, that secretarial preapproval is not statutorily required does not address the propriety of harmless error review. *Voge,* 844 F.2d at 779; *Evensen,* 654 F.2d at 71. On the other hand, we note that the regulatory scheme is arranged to give the Secretary of the Army unconditional control over DAADB proceedings involving reserve component servicemen with greater than eighteen years of active federal service.[3] Had the Secretary decided against DAADB proceedings in Wagner's case, there is no question the outcome would have been different.[4]

Although the first justification for refusing to review the ABCMR's decision for harmless error is inconclusive, the second is not. The nature of the procedural error involved requires our conclusion that harmless error review is inappropriate in this case, as the magnitude of the effect of the error on the proceeding defies assessment by a reviewing body. The regulations provide the Secretary with unbridled discretion over DAADB proceedings involving individuals with Wagner's years of active federal service. While the Secretary might have made the same decision prior to the commencement of the separation proceedings, ample reasons exist for why, on a fresh review of Wagner's record, he might instead have refused to permit proceedings and instead opted to retain him in active federal service. Like the deficient composition of selection boards at issue in *Doyle,* "it is not possible for a reviewing body to determine what effect the error had on the judgment of the original proceeding...." *Doyle,* 599 F.2d at 996. Furthermore, had the Army complied with its regulation and the Secretary exercised his discretion, the Secretary's determination would have been unreviewable by any court. *See Sargisson,* 913 F.2d at 921–22 (explaining that a fully discretionary decision by the Secretary of the Air Force was "beyond the ken of judicial competence"); *Voge,* 844 F.2d at 779–81 (declining to review a discretionary decision by the Secretary of the Navy as nonjusticiable). While we may, as we do

---

3. The extent of the discretion granted to the Secretary affords the Secretary full decision-making authority over the specific personnel needs of the Army at the time the decision is made prior to release of an officer (e.g., the needs of the Army in Afghanistan, Iraq, and Haiti).

4. The dissent argues that we should analogize this case to decisions involving the initiation of proceedings, such as indictments by grand

juries. We note, however, that the focus of the grand jury inquiry and the subsequent trial before the petit jury each have the same focus—the guilt of the defendant. Put differently, the two proceedings are duplicative, facilitating harmless error review. Here, the Secretary's exercise of discretion differs from the DAADB's inquiry and, consequently, the result of the DAADB proceeding provides no indication of what decision the Secretary may have rendered.

here, review the DAADB proceedings for compliance with Army regulations, we may not engage in the substantive review of the Secretary's discretionary decision—or lack thereof—necessary to determine whether the procedural error was harmless.

Our conclusion that harmless error review is inappropriate for the type of procedural error in Wagner's case recognizes that, while in many cases such review is appropriate, there remain situations in which it is not. Where reviewable standards or factors constrain the exercise of discretion, harmless error continues to be the appropriate test. *See, e.g., Carmichael*, 298 F.3d at 1375–76 (remanding for evaluation of, inter alia, whether the Navy would have denied a serviceman's religious accommodation request under the factors set out by the Navy's accommodation procedures); *Sargisson*, 913 F.2d at 922–23 (contrasting review of standardless discretionary decisions with review of compliance with statutory procedural requirements). Where the effect of an error on the outcome of a proceeding is unquantifiable, however, we will not speculate as to what the outcome might have been had the error not occurred. This is particularly true here, where a finding of harmlessness would require us to approximate the absolute discretion afforded the Secretary of the Army on personnel matters with a determination of our own.

## III. CONCLUSION

For the reasons given above, we conclude that Wagner was not legally released from active service due to the Army's failure to adhere to its involuntary separation procedures as set out in AR 600–8–24. Accordingly, the decision of the Court of Federal Claims denying Wagner's motion for Judgment on the Administrative Record and granting the Government's cross-motion is reversed and we remand for entry of a proper judgment in accordance with this opinion and the determination of the appropriate remedy.

*REVERSED AND REMANDED.*

## IV. COSTS

Costs to appellant.

DYK, Circuit Judge, dissenting.

I respectfully dissent from the majority's holding that the decision of the Department of the Army Active Duty Board ("DAADB") on the merits must be set aside because the proceeding was not properly initiated by the Secretary, but instead was initiated by a Personnel Management Officer at the Army's Full Time Support and Management Center.

The majority relies on decisions of our court holding that, when a selection board is improperly constituted, its decisions on the merits must be set aside. *See ante* at 1362–1364. I have no quarrel with those decisions, but they simply have no application when the issue is whether the proceeding was improperly *initiated*. For the answer to that question we must turn to cases dealing with errors in the initiation of proceedings. Those cases require a contrary result.

First, even in the grand jury context, improper grand jury proceedings do not normally require setting aside a petit jury verdict of conviction. *See United States v. Mechanik*, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986). In *Mechanik*, the grand jury proceedings allegedly violated Federal Rule of Criminal Procedure 6(d), which limits those who may be present at a grand jury proceeding. *See id.* at 68, 106 S.Ct. 938. However, the defendants did not discover the alleged violation until after their trial had commenced. The district court denied a motion to dismiss the indictment after the petit jury had convicted the defendants. *Id.* The Supreme

Court held that any error in the grand jury proceeding was harmless:

> [T]he petit jury's verdict rendered harmless any conceivable error in the charging decision that might have flowed from the violation. In such a case, the societal costs of retrial after a jury verdict of guilty are far too substantial to justify setting aside the verdict simply because of an error in the earlier grand jury proceedings.

*Id.* at 73, 106 S.Ct. 938.

The Court "express[ed] no opinion as to what remedy may be appropriate for a violation ... that has affected the grand jury's charging decision and is brought to the attention of the trial court before the commencement of the trial." *Id.* at 72, 106 S.Ct. 938.[1] Here, the alleged error in the initiation of the proceedings was not raised until after the decision recommending removal. Thus, the improper initiation of the DAADB proceeding was harmless.[2]

Second, even if the error in the charging decision were not harmless, the initiation of the charge was plainly ratified by the Secretary in his final decision approving the appellant's release from active duty on January 20, 1998.[3] The District of Columbia Circuit decision in *Doolin Security Savings Bank, F.S.B. v. Office of Thrift Supervision*, 139 F.3d 203 (D.C.Cir.1998), is quite similar. There, a bank alleged that the proceedings against it for allegedly unsafe and unsound banking procedures were invalid because they had been initiated by the filing of a Notice of Charges against the bank by an "Acting Director" who had never been nominated, confirmed, and appointed to the position. *See id.* at 204. The court of appeals held that, even if the proceedings had been improperly initiated, the director who issued the final decision—who had properly been appointed to the position pursuant to the Vacancies Act, 5 U.S.C. §§ 3345–3349—had ratified the Notice of Charges by issuing that final decision. *Doolin*, 139 F.3d at 211, 214. This was so because the director in *Doolin* had issued his final decision "at a time when he could have initiated the charges himself." *Id.* at 214. So too here, the Secretary could have initiated the charges when he ratified the DAADB's decision releasing the appellant from active duty, as the regulations do not limit the period for the initiation of such actions. *See* Army Regulation 600–8–24 ¶¶ 2–31, 2–32.

Under these circumstances, it is clear that any error in the initiation of the pro-

---

1. The Supreme Court subsequently held that its "customary harmless-error inquiry is applicable where ... a court is asked to dismiss an indictment prior to the conclusion of the trial." *Bank of N.S. v. United States*, 487 U.S. 250, 256, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988).

2. The Court in *Mechanik* also distinguished the situation where "racial discrimination in the composition of the jury that indicted the defendant" existed because "racial discrimination in the selection of grand jurors is so pernicious, and other remedies so impractical, that the remedy of automatic reversal [i]s necessary as a prophylactic means of deterring grand jury discrimination in the future." 475 U.S. at 70 n. 1, 106 S.Ct. 938 (citing *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986)). There is no allegation of discrimination in this case.

3. This action was taken by the Acting Assistant Secretary of the Army for Manpower and Reserve Affairs pursuant to delegated authority, *see* United States Army General Order No. 10 ¶ 8 (Aug. 12, 1997). The appellant contends that personal action by the Secretary was required, relying on Army Regulation 600–8–24 ¶ 2–31h and *Roberts v. Vance*, 343 F.2d 236 (D.C.Cir.1964). The majority here does not hold that personal action by the Secretary was required, and *Roberts* does not hold otherwise. *Roberts* merely holds that secretarial approval of the release is not itself sufficient if the required Board proceedings were not held. *Id.* at 239.

ceedings here was either harmless or rendered moot by the Secretary's ratification. I respectfully dissent.