John MARSHALL, Appellant,

v.

Grant SAWYER, as Governor of the State of Nevada, et al., Appellees.

No. 20145.

United States Court of Appeals
Ninth Circuit.
Aug. 10, 1966.

---

5. Garcia v. United States, 315 F.2d 133, 137 (5th Cir. 1963).

106

William B. Beirne, A. L. Wirin, Fred Okrand, Los Angeles, Cal., for appellant.

Harvey Dickerson, Carson City, Nev., John C. Bartlett, Reno, Nev., Madison B. Graves, Las Vegas, Nev., J. A. Donnelley, San Diego, Cal., for appellees.

Before POPE, HAMLEY and KOELSCH, Circuit Judges.

HAMLEY, Circuit Judge:

John Marshall brought this civil rights action to recover damages and obtain injunctive relief.[1] He claimed that he was the victim of an unconstitutional agreement and policy to discriminate against him and to bar him from the State of Nevada, as an "undesirable" person. Marshall named, as the so-called state defendants, the Governor of Nevada, State Gaming Control Board of Nevada, Nevada Gaming Commission, and the members of the board and commission. As the so-called non-state defendants, he named D. I. Operating Company, a Nevada corporation which operates the Desert Inn Hotel, and five employees of that company.

The district court dismissed the action on the ground that the federal court should abstain and remit Marshall to his state court remedies. We reversed and remanded the cause to the district court for further proceedings. Marshall v. Sawyer, 9 Cir., 301 F.2d 639. After a non-jury trial, judgment was entered for defendants. Marshall appeals.

The board and commission named above regulate and control legalized gambling in Nevada pursuant to the Nevada Gaming Control Act (Act), Chapter 463 of the Nevada Revised Statutes. On February 20, 1960, the commission adopted Regulation 5.010. Paragraph 1 of this regulation provides that all "establishments wherein gaming is conducted" shall be operated in a manner "suitable to protect the public health, safety, morals, good order and general welfare of the inhabitants of the State of Nevada." Paragraph 3 of the regulation provides, in part, that "(c)atering to, assisting, employing or associating with, either socially or in business affairs, persons of notorious or unsavory reputation or who have extensive police records * * *" may be deemed "* * * unsuitable manners of operation. * * *"

To implement this part of Regulation 5.010, the board and commission, in February and early March, 1960, caused to be compiled a brochure commonly referred to as the black book. This document contains the name, photograph, description and other identifying data of eleven men considered by these agencies to be persons within the classes referred to in Regulation 5.010(3). Marshall is one of the persons so identified in the black book.

This brochure, together with a letter dated March 29, 1960, signed by the chairman of the board, was handed to representatives of the thirteen major casino operators in the Las Vegas area, and to representatives of other large casinos in other parts of the state. Board officials requested these representatives to cooperate with the board in

1. The provisions of the Civil Rights Act particularly relied upon are 28 U.S.C. § 1343(1), (3) and (4) (1964), and Rev. Stat. § 1979 (1875), 42 U.S.C. § 1983 (1964).

the program manifested by Regulation 5.010, the black book, and the letter of March 29, 1960.[2]

Marshall had lived in Las Vegas for about four years during the 1950's. He engaged in business there and bought Nevada land, some of which he still owns. He has had occasion to return to Las Vegas on business several times; some of these trips were concerned with litigation over his property. In October, 1960, Marshall came to Las Vegas on business and registered at the Tropicana Hotel. He was immediately placed under surveillance by agents of the board. While he was there, representatives of that hotel told him he was in the black book and asked him to leave, stating that if he did not the hotel would lose its gambling license. Marshall left. That week whenever Marshall went to a Las Vegas establishment that operated a casino, he was asked to leave because of pressure from the state defendants.[3]

At approximately 10:00 p.m. on the night of October 28, 1960, Marshall entered the premises of the Desert Inn Hotel. He occupied a seat in a booth in the bar some ten to twelve feet from the gaming area. From this seat he could observe gaming activity by looking over the back of the booth in which he was seated. Shortly thereafter, Don Borax and J. G. Murray, security officers of Desert Inn Hotel, requested Marshall to leave. He refused to do so and ordered another drink. A waitress from whom the drink was ordered refused to serve him. At this time Borax, Murray and the waitress were acting in accordance with instructions given to them by officers and agents of D. I. Operating Company.

Upon the refusal of Marshall to leave, Roen and Ruby Colod, managing officers of the company, again requested him to leave. Marshall once more refused to leave but moved directly to the bar, where he ordered another drink. The bartender moved away from Marshall and did not serve him. Marshall then asked for and received the names of the persons who had asked him to leave and who had refused him service, stating that it was for the purpose of this lawsuit.

Marshall was assured at the time that no physical force would be used to remove him from the premises, and that he would not be physically ejected. He thereupon left the Desert Inn Hotel. No physical force nor violence was visited upon him on the occasion just described. The non-state defendants asked Marshall to leave the premises of the Desert Inn Hotel solely because they had been requested by the board, its agents, representatives and employees, not to cater to Marshall.

Marshall was not excluded from any establishment serving food or drinks, or from any place offering rooms, or from any place of amusement in the State of Nevada except ones in which there were major casinos licensed by the commission.

2. Board officials suggested various courses of action the licensees could take in providing such cooperation. Among these were the following:
 " * * * if detected while attempting to register at one of the major hotels included in this program, they might be told no rooms were available or should they succeed in registering under an assumed name or before their true identity were known to the management, they might be requested to leave and should they refuse, they might thereafter receive such poor service with respect to making up their rooms, the use of the telephone and in the coffee shop, showroom or bar, that they would shortly check out, it being recognized that as a matter of general practice, the gaming casinos themselves reserve the right to decline to permit certain individuals to gamble."

3. One method pursued by the state defendants in exerting pressure on licensing establishments was to send in teams of state agents to examine the dice and cards at the casinos which had catered to Marshall. This was done twice during the third week of October, 1960. Allard Roen, one of the managing officers of the Desert Inn testified that Chairman Abbaticchio told him the board was going to continue this type of procedure " * * * as long as people in the black book were being admitted to the hotels."

None of the actions of the defendants, as described above, was based upon considerations of color, race, creed, religion or national origin.

The district court found that Marshall's name was included in the black book because he had an extensive police record. This record, the court found, spanned the period from April, 1929, through August, 1952, and involved six convictions, including one for a felony. The court found that these convictions were obtained under various names by which Marshall had been known, including the names Joe Russo, Frank Roberto, Marshall Cafano, Joseph Rinaldi and George Marshall.

The court further found that Marshall had been questioned at least a dozen times in connection with the investigation of crimes, including murder. Additionally, the court found that Marshall had a reputation in Chicago, Illinois, of using "muscle techniques such as threats, extortions, bombings and murder." On or about January 26, 1953, the court found, Marshall was reported by the Chicago Crime Commission to have been arrested eighteen times between the years 1929 and 1951, and as having a reputation of being a bank robber, ex-peddler of alcohol and a current bookmaker.

The court found that at the time the black book was compiled the board was in possession of the information concerning Marshall, referred to above, and in possession of a report on organized crime in the State of California, a portion of which is quoted in the margin.[4] Marshall admitted that between the years 1937 and 1951 he was engaged in booking illegal bets on horse races in Chicago. At the trial he offered no evidence bearing upon his reputation, and admitted his police record, which record is also set out in his own complaint instituting this action.

The district court found that the specific purpose of the state defendants in compiling the black book was to exclude the persons therein named, or any other person of similar character and qualifications, from the entire premises licensed for gaming. This would include not only the gaming area, but also the hotel, bars, restaurants, amusement areas, golf course, swimming pool and all other parts of the operation.

The district court further found that the state defendants acted reasonably in classifying Marshall as a person who should be excluded from gaming establishments in the State of Nevada. The court also found that the action of the state defendants in causing Marshall to be excluded from the entire premises where gaming was permitted and licensed, and not merely from the gaming area of such premises, was necessary in order to achieve effective enforcement of the Act and of the regulations of the commission and board. Additionally, the court found, Marshall suffered no pecuniary damage whatsoever by reason of his inability to remain in any hotel, bar or restaurant in Nevada where there was licensed gaming.

On the basis of these and other findings, the district court concluded that none of the defendants violated any of Marshall's constitutional rights, and that he was entitled to no relief in this action. Judgment for defendants was thereupon entered and this appeal followed.

Marshall argues that the finding of fact that defendants acted reasonably in excluding him from the entire premises of establishments where gambling ca-

4. Concerning Marshall, the report states: "Reported to be top Lieutenant in Tony Accardo's Syndicate, the successor of the old Capone gang. In December 1957, when Cohen and Fred Sica attempted to muscle a gambler into paying a bookmaking debt, the victim phoned Caifano * in Chicago. The matter was quickly settled. Caifano is a suspected underworld muscle and triggerman. He is high up in the numbers racket. He has a record of arrests, including the serving of terms for both burglary and bank robbery. (* Plaintiff was born Marchello Caifano in New York City, and legally changed his name to John Michael Marshall in 1955 at Clark County, Nevada.)"

sinos were in operation, and that such was necessary in order to achieve effective enforcement of the Act and Regulation 5.010, is clearly erroneous. He asserts that defendants made no showing of what the evil is that would result from his law-abiding presence in the non-gaming portion of the premises.

Regulation 5.010 in effect warns each gaming licensee not to cater, in any part of the licensee's establishment, to "persons of notorious or unsavory reputation or who have extensive police records." This regulation therefore represents an administrative determination, made in the course of rule-making, that effective enforcement of the Act requires that such persons be excluded not only from the gaming area, but also any other part of the establishment.

■ Marshall has not attacked the validity of this regulation.[5] It follows that there was no proper question of fact before the trial court as to whether exclusion of Marshall (assuming him to be a person of the kind described) from the entire establishment of the Desert Inn Hotel or any other major casino establishment, was necessary to achieve effective enforcement. The unchallenged regulation, manifesting an administrative determination to that effect, settled that question for the purposes of this case. No such question of fact being properly before the court, we need not decide whether the challenged finding of fact concerning that question is clearly erroneous.[6]

Marshall contends that, under the Supreme Court "sit-in" decisions,[7] he could not have been forcibly removed from the Desert Inn Hotel as a trespasser while peacefully requesting service therein and that, therefore, coercing him to leave in the manner described above violated his rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

■ This argument is based on the proposition that all citizens whose conduct is peaceful and orderly have a constitutional right to enjoy private businesses offering public accommodations, free from state interference. But the cases cited do not establish such a broad and unrestricted right. The pronouncements of the Supreme Court in the "sit-in" decisions were directed at discrimination based solely on race; these cases are hardly analogous to the present situation which involves refusal of service on the basis of a criminal record in an establishment which also offers gambling activity.

Marshall has not attacked the validity of Regulation 5.010 which supported the defendants' action. For the purposes of this case, that regulation must therefore be considered a valid restriction on the use of gaming facilities by certain classes of individuals. Similarly, the determination inherent in unchallenged Regulation 5.010, that effective regulation requires the exclusion of these individuals from the entire premises of the establishments offering gaming must also

---

5. Had he done so, it would have been necessary to convene a three-judge court pursuant to 28 U.S.C. §§ 2281, 2284 (1964), since Regulation 5.010 constitutes an administrative order of general application representing considered state policy. See Marshall v. Sawyer, 9 Cir., 301 F.2d 639, 644–645.

6. For the same reason, Marshall's insistence, at the trial and here, that this is not a "gambling case" because he was not endeavoring to enter the gaming area of the Desert Inn Hotel or any like establishment, is without relevance.

7. The decisions cited are: Bell v. State of Maryland, 378 U.S. 226, 286, 293–294,

304, 346, 84 S.Ct. 1814, 12 L.Ed.2d 822, concurring opinion of Justice Goldberg, dissenting opinon of Justice Black; Avent v. State of North Carolina, 373 U.S. 375, 83 S.Ct. 1311, 10 L.Ed.2d 420; Gober v. City of Birmingham, 373 U.S. 374, 83 S. Ct. 1311, 10 L.Ed.2d 419; Lombard v. State of Louisiana, 373 U.S. 267, 83 S.Ct. 1122, 10 L.Ed.2d 338; Peterson v. City of Greenville, 373 U.S. 244, 83 S.Ct. 1119, 10 L.Ed.2d 323; Garner v. State of Louisiana, 368 U.S. 157, 82 S.Ct. 248, 7 L.Ed.2d 207; and Boynton v. Commonwealth of Virginia, 364 U.S. 454, 81 S.Ct. 182, 5 L.Ed.2d 206.

be considered valid. The presence of this regulation and Marshall's failure to contest it forecloses his argument based on a claimed right to unrestricted use of private businesses offering public accommodations.

Viewed in this light, the Supreme Court decisions relied upon by Marshall are inapposite, and his argument based on those decisions is without merit.

Marshall asserts that the effect of defendants' conduct was, arbitrarily and without warrant, to restrict, impede and impair his right to move in and about the State of Nevada, thereby depriving him of due process, in violation of the Fourteenth Amendment.

The basic premise of this argument is that Marshall has been restricted and impeded in moving in and about the state "arbitrarily and without warrant." Unchallenged Regulation 5.010 establishes that such restriction as has been placed upon Marshall is not arbitrary and without warrant. This being so, his exclusion from fifteen or twenty Nevada gambling establishments has not restricted and impeded his movements in that state in any sense cognizable under the Fourteenth Amendment.

Marshall contends that in listing his name in the black book and accompanying letter, without first affording him an administrative hearing, the state defendants violated Article I, § 10, cl. 1 of the Constitution, which forbids the states from passing any bill of attainder, and also violated the Due Process Clause of the Fourteenth Amendment.

As generally understood, a bill of attainder is an act of a legislative body that applies either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial. Garner v. Board of Public Works of City of Los Angeles, 341 U.S. 716, 722, 71 S.Ct. 909, 95 L.Ed. 1317.

Marshall points to a passing comment by Justice Black in his concurring opinion in Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 143, 71 S.Ct. 624, 95 L.Ed. 817, as implying that an act by an administrative or executive branch of government may constitute a bill of attainder. We do not regard the language relied upon as authority for thus expanding what appellant himself concedes to be the traditional role of a bill of attainder.

Assuming, without deciding, that the black book and accompanying letter are, in other respects, in the nature of bills of attainder, the fact that they were not legislative acts deprives them of status as bills of attainder in the constitutional sense.

Procedural due process requires that when, as a premise for administrative action, an agency of government makes a determination of adjudicative facts, one who has a sufficient interest or right at stake shall be afforded an evidentiary hearing before the agency, except in the rare circumstance when some other interest, such as national security, justifies an overriding of such interest. See Davis, The Requirement of a Trial-Type Hearing, 70 Harv.L.Rev. 193, 199 (1956). We accept Professor Davis' definition of "adjudicative facts":

> "Adjudicative facts are facts about the parties and their activities, businesses, and properties, usually answering the questions of who did what, where, when, how, why, with what motive or intent; adjudicative facts are roughly the kind of facts that go to a jury in a jury case. Legislative facts do not usually concern the immediate parties but are general facts which help the tribunal decide questions of law, policy, and discretion." (*Ibid.*)

Measured by the foregoing definition, the facts determined by the board and commission as a premise for inclusion of Marshall's name in the black book and accompanying letter—that he is a person of notorious or unsavory reputation, and is a person who has an extensive police record—are adjudicative facts. It may be seriously questioned, however, whether his wish to enter and obtain service in a licensed gambling es-

tablishment constitutes an interest or right sufficient to entitle him to assert this due process claim.[8]

But, passing this, we believe there is another circumstance present here which precludes Marshall from asserting this due process claim. Under Regulation 5.010(3), persons who have an extensive police record are to be excluded from establishments which operate gambling casinos. The letter of March 29, 1960, which accompanied the black book, recites that the individuals named in that brochure are "persons who come within the provisions of subsection 3(e) * * *" of that regulation.

Marshall in effect concedes the correctness of the agency determination, implicit in its compilation of the black book, that he has an extensive police record.[9] In his complaint he alleged, in detail, his own police record extending from 1929 to 1955. In the pretrial order proposed by Marshall's counsel, but which was not signed by the judge, the same police record was set forth. At the trial, Marshall admitted that he had a police record, and no evidence to the contrary was submitted on his behalf. The trial court expressly found that Marshall has an "extensive" police record, and on this appeal he has not challenged that finding.

■■ In our opinion, one who concedes the correctness of an administrative determination of an adjudicative fact is not entitled to damages or injunctive relief in a civil rights action based on a claim that he was denied an evidentiary hearing in connection with the determination of that fact. Under the indicated circumstances, the due process claim is without substance and involves, at most, a technical violation which warrants neither an award of damages nor vindication in a court of equity.

This is not to say that administrative agencies may safely proceed to the determination of adjudicative facts without affording a hearing, on the assumption that the correctness of the factual determination can be sustained in court in the event a civil rights action is instituted. It is not the fact that the correctness of this factual determination has been upheld by the trial court in the present suit which renders Marshall's due process claim a mere technicality. The circumstance which does have that effect is the fact that Marshall himself concedes the correctness of that determination. It must be apparent that administrative agencies may not safely assume that, in other proceedings, they will be likewise relieved from liability which might otherwise attach if no evidentiary hearing is provided.

For the reasons indicated, and subject to the limitations stated, we hold that Marshall's claim based upon the failure to accord him an evidentiary hearing provides no basis for relief under the Due Process Clause.

Marshall argues that the action of the defendants in causing him to be ejected from the Desert Inn Hotel interfered with his right of privacy and repose guaranteed by the Fourth Amendment, made applicable to the states by the Fourteenth Amendment. He also contends that the described action of the defendants demonstrates such arbitrariness and unreasonableness in the classification of Marshall as a person unfit to be on the premises of a gaming establishment as to constitute a violation of the Equal Protection Clause of the Fourteenth Amendment.

■■ These claims may or may not have merit as related to the provisions of Regulation 5.010 excluding described classes of persons from the entire prem- ˙

---

**8.** As required by the fact that Regulation 5.010 is not challenged by Marshall, we do not distinguish between the gaming and non-gaming areas of establishments which operate licensed casinos.

**9.** In the pretrial order proposed by Marshall, he indicated his willingness to agree

that the basis for his designation as an "undesirable" is his claimed criminal record, which is then set out in the proposed order. The trial court also so found, and Marshall has not questioned that finding.

ises of the establishments which operate licensed gambling casinos. But Marshall has not challenged the validity of that regulation and may not do so in this suit.[10] Proceeding, as we must, on the assumption that the regulation is valid, and in the light of Marshall's concession and the trial court finding that he is a member of one of the classes named therein, the ejectment of Marshall from the Desert Inn Hotel did not deprive him of any constitutionally-guaranteed right of privacy and repose, or right to be protected from an arbitrary or unreasonable classification.

Affirmed.