Joyce L. WALMER, Plaintiff,

v.

**UNITED STATES DEPARTMENT OF DEFENSE and Department of the Army, Defendants.**

Civ. A. No. 93–2015–EEO.

United States District Court, D. Kansas.

Oct. 15, 1993.

Jeffrey L. Baxter, Chapman, Waters & Baxter, Leavenworth, KS, Deborah A. Hooper, Merritt Island, FL, for plaintiff.

Nora M. Foster, Office of U.S. Atty., Kansas City, KS, Vincent M. Garvey, Paul W. Bridenhagen, Robert A. Van Kirk, U.S. Dept. of Justice Civ. Div., Washington, DC, for defendants.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

On August 27, 1993, the above captioned matter came before the court on plaintiff's motion for preliminary injunction (Doc. # 19). After carefully considering the arguments and briefs of the respective parties, the court makes the following findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52(a).

The relevant facts are not in dispute. Plaintiff is a female officer in the United States Army. After serving in the Reserve Officer Training Corps in college, she was commissioned a second lieutenant in the Military Police Corps in 1979. Plaintiff has been in the United States Army from 1979 through the present. She has served in a variety of assignments and has been promoted through the years. Her current rank is major. Throughout her thirteen-year military career, her immediate superiors have recognized plaintiff as "one of the best," "a superb leader," and "the epitome of a commander." At the time of the discharge proceedings at issue, plaintiff was rated in the top 25 percent of the Army. Based upon the record before this court, plaintiff appears to be an outstanding military officer.

In January 1992, an alleged former homosexual lover of plaintiff's informed the Army that plaintiff was a homosexual, and had been involved in a homosexual relationship with her while plaintiff was in the Army. The Army's Criminal Investigation Division conducted an investigation into the allegations pursuant to Army Regulation ("AR") 635–100 ¶ 5–16.

As a result of this investigation, Lieutenant General Shoffner, the Commanding General at Fort Leavenworth, initiated discharge proceedings against plaintiff. In his memorandum directed to plaintiff, General Schoffner informed plaintiff that she was "required to show cause for retention on active duty under the provisions for [sic] paragraph 5–11a(6) and (8), AR 635–100 because of misconduct, moral or professional dereliction." The memorandum also informed plaintiff:

This action is based on the following specific reasons for elimination:

a. Acts of personal misconduct. Specifically, between 1983 and 1991, you engaged in homosexual acts with a Pamela [sic] S. O'Brien. Further, you married Pamela [sic] S. O'Brien, a person then known to be a person of the same biological sex as yourself, on or about 25 December 1983. The investigation report documenting this misconduct is enclosed.

b. Acts of personal misconduct. Specifically, you used marihuana on several occasions between 1983 and 1990.

c. Conduct unbecoming an officer, as evidenced by paragraph 2a and 2b, above.

Plaintiff was advised of her rights under AR 635–100, including the right to submit her resignation or request discharge in lieu of elimination, and her right to submit a rebuttal and request an appearance before a Board of Inquiry ("BOI") in lieu of resignation or discharge.

Plaintiff elected to appear before a BOI. During the BOI proceedings, plaintiff was represented by both military and civilian counsel and was present at all stages of the proceedings. The government presented its case through stipulations of fact and expected testimony. Each of the stipulations submitted by the government was reviewed and

signed by the plaintiff, her civilian and military counsel, and the government's representative.

In Government Exhibit # 9, "Stipulation of Fact," plaintiff acknowledged the truth of the following facts:

1. That on 12 January 1992, Pamala O'Brien reported to the Army that MAJ Joyce L. Walmer and Pamala O'Brien had engaged in a homosexual relationship. MAJ Joyce L. Walmer admits that she has in the past engaged in homosexual acts with Ms. O'Brien.

\*     \*     \*     \*     \*     \*

3. That MAJ Joyce L. Walmer does not satisfy the criteria in paragraphs 5–51a(1) through (5), AR 635–100, and is not entitled to an exception to the mandatory separation of an officer for homosexual acts as set out in the cited paragraph and paragraph 5–56, AR 635–100.

\*     \*     \*     \*     \*     \*

5. That Ms. O'Brien made other allegations of misconduct as mentioned in the initiation of the elimination memorandum. However, there is no evidence presented regarding these other allegations, these other allegations were not referred to this Board, and will play no part in these proceedings.

In paragraph three of the Stipulation of Fact, plaintiff specifically acknowledged that none of the exceptions to the military policy requiring discharge of homosexuals applied to her. During the hearing, prior to the admission into evidence of Government Exhibit # 9, the president of the BOI determined on the record that plaintiff had read and discussed with her counsel the stipulation prior to signing it and that she desired to enter into the stipulation. Plaintiff told the president she knew that by signing the document she was admitting she had performed homosexual acts and that the BOI would be required to recommend a discharge pursuant to AR 635–100, ¶ 5–56.

AR 635–100, ¶ 5–51 provides:

The basis for separation may include pre-service, prior service, or current service conduct or statements. An officer shall be separated under the provisions of this section if one of the following approved findings is made:

a. The officer has engaged in, attempted to engage in, or solicited another to engage in a homosexual act or acts unless there are approved further findings that—

(1) Such conduct is a departure from the officer's usual and customary behavior.

(2) Such conduct under all circumstances is unlikely to recur because it was solely the result of immaturity, intoxication, coercion, or a desire to avoid military service.

(3) Such conduct was not accomplished by use of force, coercion, or intimidation by the officer during a period of military service.

(4) Under the particular circumstances of the case, the officer's continued presence in the service as an officer of the Army is consistent with the interest of the Army in proper discipline, good order, and morale.

(5) The officer does not desire to engage in or intend to engage in homosexual acts.

b. The officer has stated that he or she is a homosexual or bisexual unless there is a further finding that the officer is not a homosexual or bisexual.

c. The officer has married or attempted to marry a person known to be of the same biological sex (as evidenced by the external anatomy of the persons involved) unless there are further findings that the officer is not a homosexual or bisexual (e.g., where the purpose of the marriage or attempt to marry was the avoidance or termination of military service).

At the conclusion of the hearing, on July 20, 1992, the president of the BOI announced the following Findings and Recommendations:

A. Based upon the evidence presented at this hearing, you did commit acts of homosexuality; and,

B. Based upon the findings, the Board recommends: Elimination because of homosexuality with the issuance of an honorable discharge certificate.

On December 3, 1992, a Board of Review ("BOR") reviewed the BOI's action and recommended plaintiff be eliminated from the Army with an honorable discharge. On December 22, 1992, the Office of the Secretary of the Army reviewed and approved the BOI's recommendation. Plaintiff's scheduled date for discharge was January 14, 1993.

On January 14, 1993, just hours before her scheduled discharge, plaintiff filed this action along with a motion for a temporary restraining order. This court granted plaintiff's motion and temporarily restrained the government from discharging plaintiff. After a series of extensions of the restraining order, the parties requested a stay of proceedings until July 31, 1993. The parties are now before the court on plaintiff's motion for preliminary injunction.

In her brief, plaintiff advances several arguments in support of her motion for preliminary injunction. First, she contends that the discharge procedure employed by the Army violated certain procedural requirements of the Administrative Procedure Act, 5 U.S.C. § 702 et seq. Plaintiff's counsel conceded, however, during oral argument, that she had abandoned this contention and was no longer advancing this claim. The court, therefore, will not consider this argument.

Next, plaintiff asserts that the Army discharged her in violation of the United States Constitution. Specifically, plaintiff maintains that AR 635–100 impermissibly discriminates against homosexuals in violation of the equal protection requirements of the Fifth Amendment to the United States Constitution, and that AR 635–100 is an unconstitutional bill of attainder.

*EXHAUSTION OF ADMINISTRATIVE REMEDIES*

Defendants initially contend that this court need not consider plaintiff's claims on the merits because plaintiff has made no attempt to appeal her discharge to the Army Board for Correction of Military Records ("ABCMR"). Thus, defendants maintain, plaintiff has failed to exhaust her administrative remedies. In our view, defendants' position is not persuasive. Plaintiff initially sought redress for the complaints she makes in this lawsuit with the BOI, but to no avail.

Her complaint was then forwarded to the General Officer Show Cause Authority ("GOSCA"), which reviewed the case for procedural defects. GOSCA then forwarded the file through channels to personnel command where it was again reviewed for substantial procedural defects. Next, continuing to pursue her administrative remedies, plaintiff sought review of the BOI decision by the BOR, but again to no avail.

■ *Mindes v. Seaman,* 453 F.2d 197 (5th Cir.1971), provides a general statement of a court's authority to review military decisions:

> [A] court should not review internal military affairs in the absence of (a) an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations, and (b) exhaustion of available intraservice corrective measures.

*Mindes,* 453 F.2d at 201. The Fifth Circuit, however, has noted four circumstances in which exhaustion is not required: (1) if the remedies do not provide an opportunity for adequate relief; (2) if the petitioner will suffer irreparable harm if compelled to seek administrative relief; (3) if administrative appeal would be futile; or (4) if substantial constitutional questions are raised. *Von Hoffburg v. Alexander,* 615 F.2d 633, 638 (5th Cir.1980). In *Hodges v. Callaway,* 499 F.2d 417 (5th Cir.1974), the court explained:

> [E]xhaustion is inapposite and unnecessary when resort to the administrative reviewing body would be futile. For example, a plaintiff obviously need not appeal to the particular DRB or BCMR if the relief requested is not within the authority of those bodies to grant.

*Hodges,* 499 F.2d at 420–21 (footnotes omitted).

■ In the case at bar, the defendants admitted in oral argument that the ABCMR does not have authority, except on an as-applied basis, to hold a military policy unconstitutional, and that in fact, it is impermissible for the ABCMR to strike down a military policy on its face. AR 635–100 makes discharge of Army officer personnel mandatory upon a finding of homosexuality, and therefore exhaustion of administrative remedies

would be futile. The law does not require a citizen to take futile acts. The court finds that plaintiff made good faith efforts to pursue relief through the appropriate governmental agencies and has effectively exhausted all possible avenues in which her requested relief might have been granted.

Moreover, because plaintiff is asserting a claim based upon constitutional grounds, she need not pursue any further administrative remedies. *See Von Hoffburg*, 615 F.2d at 638. Constitutional issues are issues singularly suited to a judicial forum and clearly inappropriate for an administrative board. Plaintiff indicated in oral argument that she has abandoned her procedural defects claims and is only relying on the merits of her constitutional claims. Plaintiff's abandonment of her procedural defects claims undermines defendants' argument that requiring review by the ABCMR "would enable the ABCMR to develop the facts, to apply the law in which they are particularly expert, and to correct their own errors."

*REQUIREMENTS FOR PRELIMINARY INJUNCTION*

We now turn to the merits of plaintiff's motion for injunctive relief. "The function of a preliminary injunction is to preserve the status quo pending a final determination of the rights of the parties." *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980). For this court to issue a preliminary injunction, the moving party must establish that:

(1) the moving party will suffer irreparable injury unless the injunction issues;

(2) the threatened injury to the moving party outweighs whatever damage the proposed injunction may cause the opposing party;

(3) the injunction, if issued, would not be adverse to the public interest;

(4) there is substantial likelihood that the moving party will succeed on the merits.

*See Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980).

The Tenth Circuit has adopted a modified interpretation of the "likelihood of success" requirement. In *City of Chanute v. Kansas Gas and Electric Co.*, 754 F.2d 310 (10th Cir.1985), the court held that if the first three requirements for a preliminary injunction are satisfied, then the movant can establish the fourth requirement, likelihood of success, by merely showing questions going to the merits so serious, substantial, difficult and doubtful as to make the issues ripe for litigation and deserving of more deliberate investigation. *City of Chanute*, 754 F.2d at 314.

Plaintiff suggests she will likely succeed on the merits of her complaint. She maintains that AR 635–100 impermissibly discriminates against homosexuals in violation of the equal protection requirements of the Fifth Amendment to the United States Constitution, and that AR 635–100 is an unlawful bill of attainder as applied to homosexuals.

■ Because we have concluded that plaintiff has failed to establish that there is substantial likelihood that she will succeed on the merits even under this circuit's modified interpretation, *City of Chanute, supra*, the first three requirements necessary to warrant preliminary injunctive relief need not be discussed.

*EQUAL PROTECTION*

Plaintiff contends that the Army's regulation prohibiting homosexuals from service in the Army violates the equal protection clause of the United States Constitution. First, plaintiff urges that this court should hold that homosexuals are a quasi-suspect class entitled to an intermediate level of scrutiny. Under the intermediate standard, a classification will not be upheld unless it has a "substantial relationship" to an "important" government interest. The Supreme Court has applied this intermediate level of scrutiny in cases involving classifications based upon gender, *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1977), and illegitimacy, *Clark v. Jeter*, 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988).

Additionally, plaintiff argues if intermediate scrutiny is not appropriate, this court should apply the active rational basis approach enunciated in *Pruitt v. Cheney*, 963 F.2d 1160, (9th Cir.1991), *cert. denied*, — U.S. ——, 113 S.Ct. 655, 121 L.Ed.2d 581

(1992), because the Army regulation directs the discharge of service members based upon their *status* as homosexuals, as opposed to their *conduct* as homosexuals.

In *Pruitt,* a former Army reserve officer challenged the Army's homosexual exclusion policy on equal protection and other grounds. The district court dismissed the plaintiff's claim, stating that the Army's determination that homosexual personnel are incompatible with its military mission is entitled to substantial deference.

On appeal, the Army urged affirmance because "its right to discharge homosexual servicepersons is so firmly supported in the law that any equal protection claim that Pruitt has asserted ... is legally insufficient on its face." *Id.* at 1164. The Ninth Circuit rejected this argument, holding that the Army's policy could not be held rational as a pure matter of law. *Id.* at 1166. Rather, the court, relying upon *City of Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), stated a court must actively review the record *"to see whether the government [has] established on the record* a rational basis for the challenged discrimination." *Id.* 963 F.2d at 1166 (emphasis in original). *Cleburne* involved an equal protection challenge to a local zoning ordinance requiring a special use permit for a group home for the mentally retarded. There, the Supreme Court held that the record did not "reveal any rational basis for believing that the [home for the mentally retarded] would pose any special threat to the city's legitimate interest ..." *Id.* at 448, 105 S.Ct. at 3258.

In *Pruitt,* the Ninth Circuit inferred from *Cleburne* that upon a plaintiff's showing of discrimination, a court may not simply accept the government's proffered justifications for its policy as presumptively valid, but must determine whether these justifications are motivated by constitutionally impermissible prejudice against the class at issue. The court reversed the district court's judgment of dismissal as to the plaintiff's equal protection claim, and remanded with directions requiring the Army to establish a factual record in support of its contention that its homosexual exclusion policy was rationally related to a permissible governmental purpose. *Id.* at 1166–67.

Here, plaintiff argues that, in light of *Pruitt,* the Army must establish *on the record* that its regulation is rationally related to a permissible governmental purpose and that the regulation does not simply give effect to society's prejudices. She claims that factual and empirical data will demonstrate there is no rational basis for the policy. At a trial on the merits, plaintiff argues that she will seek to admit into evidence numerous reports, including the 1989 report of the Defense Personnel Security Research and Education Center ("PERSEREC") entitled *Nonconforming Sexual Orientations and Military Suitability.* This report, commissioned by the Pentagon and conducted by the Defense Department, concluded that the job performance of homosexual men and women as a group is no different from that of heterosexual men and women. Plaintiff also refers to the 1957 Crittendon report, officially known as the *Report of the Board Appointed to Prepare and Submit Recommendations to the Secretary of the Navy for the Revision of Policies, Procedures and Directives Dealing with Homosexuals,* and the recent Rand Study, released in August 1993. The Crittendon report stated that there was no "visible supporting data [to support the conclusion that gays and lesbians] cannot acceptably serve in the military." Crittendon Report, p. 5. Plaintiff reasons that because the Army cannot establish through a *factual* record a rational basis for its policy, such policy must be based wholly on societal prejudice and thus violates the constitutional guarantee of equal protection.

Defendants dispute plaintiff's characterization of the active rational basis test. Defendants argue that the active rational basis standard in *Pruitt,* which purports to place the burden on the policymaker to provide more than a recitation of the rationale for the policy on the record, has been called into question by the recent United States Supreme Court case *Heller v. Doe,* —— U.S. ——, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). Defendants contend that the burden is on the person challenging the policy to negate every conceivable rational basis for the policy; the

government need only advance *any* rational reason for its policy, and need not submit evidence in support thereof on the record. Further, defendants argue that plaintiff's attempt to employ an "active rational basis" standard is simply foreclosed by Tenth Circuit precedent, specifically the Tenth Circuit's holding in *Rich v. Sec. of the Army*, 735 F.2d 1220 (1984).

In *Rich*, the Army honorably discharged a serviceman for fraudulent enlistment when it learned that, in the enlistment process, the serviceman falsely represented that he was not a homosexual. The serviceman sued, seeking damages and injunctive and declaratory relief. The district court upheld the Army's action. In affirming the lower court's decision, the Tenth Circuit stated:

> Plaintiff contends that the Army's policy of excluding homosexuals violates his rights under the equal protection component of the Fifth Amendment due process clause because homosexuality is an immutable characteristic which must be evaluated under the strict scrutiny standard of review. Furthermore plaintiff says that even if we do not agree that homosexuality is a suspect classification, there is nevertheless an equal protection violation because the Army has not met its burden of justifying discrimination against homosexuals.
>
> We cannot agree. A classification based on one's choice of sexual partners is not suspect. *E.g., National Gay Task Force v. Board of Education*, 729 F.2d 1270, 1273 (10th Cir.1984); *see also Hatheway v. Secretary of Army*, 641 F.2d 1376, 1382 (9th Cir.1981), *cert. denied*, 454 U.S. 864, 102 S.Ct. 324, 70 L.Ed.2d 164 (1981); *DeSantis v. Pacific Telephone & Telegraph Co.*, 608 F.2d 327 (9th Cir.1979). And even if heightened scrutiny were required in reviewing the Army Regulations because they restrict a fundamental right, *see, e.g., Memorial Hospital v. Maricopa County*, 415 U.S. 250, 254, 262, 94 S.Ct. 1076, 1080, 1084, 39 L.Ed.2d 306 (1974); *Shapiro v. Thompson*, 394 U.S. 618, 634, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600 (1969); *Hatheway v. Secretary of Army, supra*, 641 F.2d at 1382 n. 6 (9th Cir.1981), the classification is valid in light of the Army's demonstration of a compelling governmental interest in maintaining the discipline and morale of the armed forces. *Hatheway, supra*, 641 F.2d at 1382; *Beller* [*v. Middendorf*], 632 F.2d [788,] 810. Thus, we cannot sustain the plaintiff's equal protection claim.

*Rich*, 735 F.2d at 1229 (footnote omitted).

The court refused to apply the strict scrutiny standard, finding that homosexuality is not a suspect classification. The court held that even if heightened scrutiny were required, the regulations prohibiting homosexuals from service were nonetheless valid in that they satisfied a *compelling* governmental interest in maintaining the discipline and morale of the armed forces.

Consequently, whether we should apply the active rational basis test or the traditional rational basis test need not be decided. Under either test, plaintiff cannot prevail because of Tenth Circuit precedent, which is binding on this court. This seems consistent with the court's earlier expression that "[t]he composition of the armed forces is a matter for Congress and the military." *Lindenau v. Alexander*, 663 F.2d 68, 73 (10th Cir.1981), *citing Gilligan v. Morgan*, 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973). Moreover, this circuit only recently adhered to its earlier view that classifications which disparately affect homosexuals receive only a rational basis review. *Jantz v. Muci*, 976 F.2d 623, 630 (10th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993).

Neither of plaintiff's briefs mentions *Rich*. During oral argument, however, in response to the court's questioning, plaintiff's counsel stated that *Rich* is no longer good law in light of *Palmore v. Sidoti*, 466 U.S. 429, 104 S.Ct. 1879, 80 L.Ed.2d 421 (1984). She claims the court did not have the opportunity to consider *Palmore* in deciding *Rich*. Actually, *Palmore* was decided several months before the Tenth Circuit decided *Rich*, and over eight years before *Jantz*. Furthermore, *Palmore* involved an equal protection claim in a child custody case wherein the court applied strict scrutiny, because of a suspect racial classification. Thus, plaintiff's sugges-

tion that *Rich* is no longer good law lacks substance.

Other circuits have upheld the military's policy regarding homosexuals. *See, e.g., Ben–Shalom v. Marsh,* 881 F.2d 454, 464 (7th Cir.1989), *cert. denied,* 494 U.S. 1004, 110 S.Ct. 1296, 108 L.Ed.2d 473 (1990) (rational basis scrutiny applied to equal protection challenge of Army regulation: "[i]f homosexual conduct may constitutionally be criminalized, then homosexuals do not constitute a suspect or quasi-suspect class entitled to greater than rational basis scrutiny for equal protection purposes"); *Woodward v. United States,* 871 F.2d 1068, 1076 (Fed.Cir. 1989), *cert. denied,* 494 U.S. 1003, 110 S.Ct. 1295, 108 L.Ed.2d 473 (1990) ("After *Bowers v. Hardwick,* 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986) it cannot logically be asserted that discrimination against homosexuals is constitutionally infirm."); *Dronenburg v. Zech,* 741 F.2d 1388, 1398 (D.C.Cir.1984) (Navy policy requiring discharge for homosexual conduct is a rational means of achieving the legitimate government interests which include the maintenance of discipline, good order and morale, mutual trust among service members, and insuring the integrity of the system of rank and command.).

We conclude that plaintiff's equal protection argument must be rejected.

### BILL OF ATTAINDER

■ Plaintiff next asserts that the military's policy as codified in AR 635–100 constitutes a bill of attainder proscribed by Article I, Section 9, of the United States Constitution. Article I, Section 9, provides that "[n]o Bill of Attainder or ex post facto Law shall be passed." A bill of attainder is "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of [sic] the protections of a judicial trial." *Nixon v. Administrator, Gen. Servs.,* 433 U.S. 425, 468, 97 S.Ct. 2777, 2802, 53 L.Ed.2d 867 (1977). Plaintiff claims the military's policy on homosexuality is a bill of attainder because the regulation designates homosexuals as a group and punishes homosexuals, by discharging them, for belonging to the group.

■ The constitutional prohibitions against bills of attainder apply only to acts of legislatures, and not to acts of administrative agencies. In *Marshall v. Sawyer,* 365 F.2d 105 (9th Cir.1966), *cert. denied,* 385 U.S. 1006, 87 S.Ct. 713, 17 L.Ed.2d 545 (1967), the Nevada Gaming Commission adopted a regulation that prohibited gambling casinos from "[c]atering to ... persons of notorious or unsavory reputations, or who have extensive police records." 365 F.2d at 107. To implement this regulation, the Commission published a "black book" listing certain individuals, including Marshall, as individuals who came within the purview of the regulation. Marshall argued that the regulation constituted a bill of attainder. In rejecting this claim, the court stated:

> As generally understood, a bill of attainder is an act *of a legislative body* that applies either to named individuals or to easily ascertainable members of a group in such a way as to inflict punishment on them without a judicial trial.

> Marshall points to a passing comment by Justice Black in his concurring opinion in *Joint Anti–Fascist Refugee Committee v. McGrath,* [341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817,] as implying that an act by an administrative or executive branch of government may constitute a bill of attainder. *We do not regard the language relied upon as authority for thus expanding what appellant himself concedes to be the traditional role of a bill of attainder.*

> Assuming, without deciding, that the black book and accompanying letter are, in other respects, in the nature of bills of attainder, *the fact that they were not legislative acts deprives them of status as bills of attainder in the constitutional sense.*

365 F.2d at 111 (citations omitted; emphasis supplied). *See also Garner v. Bd. of Public Works,* 341 U.S. 716, 71 S.Ct. 909, 95 L.Ed. 1317 (1951); *U.S. v. Lovett,* 328 U.S. 303, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946).

■ The military's policy on homosexuality is not a legislative act, but rather a compilation of Army Regulations implementing Department of Defense Directives. Specifically, AR 635–100 implements DOD Directive 1332.30. In her brief, plaintiff attempts to

rebut this distinction by asserting: "the courts have applied bill of attainder analysis to regulations by administrative agencies. *See Hudson v. United States,* 766 F.2d 1288 (9th Cir.1985) (concerning IRS regulation); *Alberico v. United States,* 783 F.2d 1024 (Fed.Cir.1986) (concerning U.S. Army regulation)." These cases do not support plaintiff's position. In *Hudson,* the court rejected the plaintiff's claim that 26 U.S.C. § 6702, a provision of the Internal Revenue Code, was a bill of attainder. 766 F.2d at 1292. *Alberico* specifically held that the amendment to an Army regulation did not constitute a bill of attainder. 783 F.2d at 1028.

We conclude that, as the military policy in question is not a legislative act, it does not meet the definition of a bill of attainder.

Moreover, the court is of the opinion that even if the military policy could be construed as a legislative act, the policy is not a bill of attainder because it does not "inflict punishment" within the meaning of the bill of attainder clause.

In deciding whether a statute inflicts forbidden punishment, [the United States Supreme Court] ha[s] recognized three necessary inquiries: (1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, "viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes"; and (3) whether the legislative record "evinces a congressional intent to punish."

*Selective Service System v. Minnesota Public Interest Research Group,* 468 U.S. 841, 852, 104 S.Ct. 3348, 3355, 82 L.Ed.2d 632 (1984).

The military policy pertaining to homosexuality does not fall within the historical meaning of legislative punishment. At common law, bills of attainder traditionally imposed the death penalty, imprisonment, banishment, and the punitive confiscation of property. *Selective Service System,* 468 U.S. at 852, 104 S.Ct. at 3355. In *Alberico,* the court considered whether an amendment to AR 635-100, enabling the Secretary of the Army to relieve convicted felons from the Army on an expedited basis, was a bill of attainder. In holding that the amendment was not a bill of attainder, the court noted that the amendment did not involve any of the several punishments the Supreme Court has referenced as being historically associated with bills of attainder. *Alberico,* 783 F.2d at 1028.

Viewed in terms of the type and severity of the burdens imposed, the regulation before us can reasonably be said to further nonpunitive purposes. As AR 635-100, ¶ 5-50a states:

Homosexuality is incompatible with military service. The presence in the military environment of persons who engage in homosexual conduct or who, by their statements, demonstrate a propensity to engage in homosexual conduct, seriously impairs the accomplishment of the military mission. The presence of these officers adversely affects the ability of the armed forces to maintain discipline, good order, and morale; to foster mutual trust and confidence among officers; to ensure the integrity of the system of rank and command; to facilitate assignment and worldwide deployment of officers who frequently must live and work under close conditions affording minimal privacy; to recruit and retain officers of the Armed Forces; to maintain the public acceptability of military service; and to prevent breaches of security.

The policy is not concerned with somehow singling out homosexuals for punishment. Furthermore, with respect to the third inquiry articulated in *Selective Service System,* 468 U.S. at 852, 104 S.Ct. at 3355, the history behind the policy does not "evince an intent to punish" homosexuals. Indeed, the Tenth Circuit has observed that maintaining the discipline and morale of the armed forces is a compelling governmental interest. *See Rich v. Sec. of the Army,* 735 F.2d 1220 (10th Cir.1984).

We conclude that the military policy regarding homosexuals is not a bill of attainder.

For all the reasons discussed, the court concludes that plaintiff has failed to satisfy the requirements for the granting of a pre-

liminary injunction. This order denying plaintiff's motion for a preliminary injunction is immediately appealable to the Court of Appeals pursuant to 28 U.S.C. § 1292. Inasmuch as the constitutional questions involved are of substantial public interest, the court in its discretion deems it appropriate to preserve the status quo of this case in the event plaintiff desires to appeal. *See* Fed.R.Civ.P. 62(c). Accordingly, the restraining order previously entered shall remain in effect for a period of sixty (60) days from the date of this order so that plaintiff may file her notice of appeal and request the Court of Appeals for a stay pending appeal. *See* Fed.R.App.P. 4(a)(1) and 8(a).

IT IS THEREFORE ORDERED that plaintiff's motion for preliminary injunction (Doc. # 19) is denied. The restraining order previously entered shall remain in effect for a period of sixty (60) days from the date of this order so that plaintiff may file her notice of appeal and request the Court of Appeals for a stay pending appeal.