**Revised April 22, 1999**

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

**No. 97-20905**

---

**CHRIS PARADISSIOTIS,**

                                        **Plaintiff-Appellant,**

**v.**

**ROBERT E. RUBIN,
SECRETARY OF THE UNITED STATES DEPARTMENT OF TREASURY; ET AL,**

                                        **Defendants,**

**ROBERT E. RUBIN,
SECRETARY OF THE UNITED STATES DEPARTMENT OF TREASURY;
R. RICHARD NEWCOMB,
DIRECTOR OF THE OFFICE OF FOREIGN ASSETS CONTROL,**

                                        **Defendants-Appellees.**

---

**Appeal from the United States District Court for the
Southern District of Texas**

---

April 1, 1999

Before JOLLY and JONES, Circuit Judges, and LAKE,[*] District Judge.

EDITH H. JONES, Circuit Judge:

        This case involves enforcement of the Libyan Sanction

Regulations, 31 C.F.R. §§ 550.101-.803 as they relate to the assets

of Chris Paradissiotis, a citizen of Cyprus.  Arguing that the

Treasury Department's Office of Foreign Assets Control ("OFAC")

---

        [*]District Judge for the Southern District of Texas, sitting by
designation.

misapplied the regulations and violated the Constitution, Paradissiotis sought declaratory, injunctive, and monetary relief in the district court. We agree with the district court's essential conclusions that Paradissiotis was validly labeled as a Specially Designated National of the Government of Libya and that his attempt to engage in transactions with property in the United States was validly regulated by the sanctions.

## I. FACTUAL AND PROCEDURAL HISTORY

In order to punish Libyan support for international terrorism, President Ronald Reagan issued, under the authority of the International Emergency Economic Powers Act, 50 U.S.C. §§ 1701-06, Executive Orders 12543 and 12544 banning commerce with Libya and freezing all United States property interests of the Libyan Government and its agents. See 51 Fed. Reg. 875, 1235 (1986). Pursuant to the orders, the Secretary of Treasury promulgated the Libyan Sanction Regulations, which later Presidents have renewed. Through OFAC, the Treasury Secretary oversees the enforcement of the sanction regulations and the licensing procedure which permits covered individuals or entities to avoid the application of the sanctions to a particular transaction.

In 1991, OFAC labeled Paradissiotis a Specially Designated National of Libya pursuant to 31 C.F.R. § 550.304(c). See 56 Fed. Reg. 37156 (1991). This designation was based on his service as president and member on the Boards of Directors of

2

Holborn Investment Company Limited ("HICL") and Holborn European Marketing Company Limited ("HEMCL"). Both HICL and HEMCL are subsidiaries of Oilinvest (Netherlands) B.V., which, in turn, is a wholly owned subsidiary of Oilinvest International, N.V., a Libyan state-controlled holding company. By virtue of his connection to these and other Libyan-related entities and, therefore, his direct or indirect actions taken on behalf of Libya, OFAC found that Paradissiotis constituted the Government of Libya ("GOL") for purposes of the sanctions regulations. See 31 C.F.R. § 550.304(c). As a specially designated national, Paradissiotis's United States assets were frozen.

From January 1993 through December 1996, Paradissiotis applied repeatedly to OFAC for a license under 31 C.F.R. § 501.801(b)(2) so that he could sell stock and exercise stock options in the Coastal Corporation ("Coastal") and receive the proceeds. Paradissiotis had received this property as President of HOTL, a downstream and offshore subsidiary of Coastal, a Delaware corporation, before the Libyan sanctions went into effect. OFAC permitted Paradissiotis to retain counsel in this country but denied his requests to conduct any other prohibited transaction.

Paradissiotis then filed suit seeking declaratory, injunctive, and monetary relief for being categorized as a Specially Designated National under the regulations. The district court denied Paradissiotis's request for a preliminary injunction

3

and granted the government's motion for summary judgment. Paradissiotis timely appealed.

## II.  ANALYSIS

Paradissiotis challenges the scope of the Libyan Sanctions Regulations, their applicability to his conduct, and OFAC's denials of his license requests.[1]  Paradissiotis contends that OFAC's interpretation of the regulations was incorrect and exceeded the scope of the authorizing statute and Executive Orders and violated certain constitutional precepts.  The Coastal stock options expired during the pendency of this case.  Because, however, Paradissiotis still owns Coastal stock that he is prevented from transferring based on OFAC's interpretation of the regulations, the agency's actions have injured him and remain judicially reviewable.    In the Libyan Sanction regulations, the Government of Libya is defined broadly to include

> Any person to the extent such person is, or has been, or to the extent that there is reasonable cause to believe that such person is, or has been, since the effective date, acting or purporting to act directly or indirectly on behalf of [the GOL].

----

[1]Our review of the district court's summary judgment is <u>de novo</u>, employing the same standards as the district court.  <u>See Urbano v. Continental Airlines, Inc.</u>, 138 F.3d 204, 205 (5th Cir.), <u>cert.</u> <u>denied</u>, --- U.S. ---, 119 S. Ct. 509 (1998).  Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, the record reflects that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law.  <u>See Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-24, 106 S. Ct. 2548, 2552-53 (1986); <u>see also</u> Fed. R. Civ. P. 56(c).

4

31 C.F.R. § 550.304(c).  Citing the phrase "to the extent" as a device of limitation, Paradissiotis first maintains that an individual is included within this regulation only when his actions benefit the GOL, directly or indirectly.  Thus, Paradissiotis asserts that the regulations do not regulate "personal" transactions that do not benefit the GOL.  The only plain meaning of the regulation, according to Paradissiotis, is that he is the government of Libya when he acts for it, and he "retains a personal sphere of activity free from OFAC regulation" when he does not.  As a result, he may transfer property, like the Coastal stock, free of OFAC regulation because he retained the stock while in the "personal sphere."[2]

The federal courts' role in this controversy is circumscribed at two levels.  First, OFAC's designation of Paradissiotis as a specially designated national of Libya, being "an agency's application of its own regulations, receives an even greater degree of deference than the Chevron standard, and must prevail unless plainly inconsistent with the regulation." Consarc Corp. v. United States Treasury Dept., Office of Foreign Assets Control, 71 F.3d 909, 914 (D.C. Cir. 1995) (internal quotation omitted); see also Thomas Jefferson Univ. v. Shalala, 512, U.S.

---

[2]If Paradissiotis continues to maintain that his acquisition of property in the United States before the Libyan sanctions were promulgated insulates the property from controls, he is wrong.  The regulations expressly applied to all property in the United States at the 1986 effective date.  See 31 C.F.R. §§ 550.209(a), 550.301(c).

5

504, 512, 114 S.Ct. 2381, 2386-87 (1994).  Second, a challenge to OFAC's regulation must either demonstrate that the statute clearly forbids the statue's interpretation or that the interpretation is unreasonable.   See Chevron U.S.A., Inc. v. Natural Resources Defense Counsel, Inc., 467 U.S. 837, 843-44, 104 S.Ct. 2778, 2781-83 (1984).

Granting OFAC the extent of deference that it is due, we cannot accept Paradissiotis's argument.  Section 550.304(c) is among the definitional provisions in the Libyan sanctions regulations.  Its purpose is to cast the widest possible net over individuals who are or have been or are suspected of being actors directly or indirectly on behalf of the government of Libya. Unlike Paradissiotis, we do not read the phrase "to the extent" as a limiting device, whereby individuals who otherwise fall within the definition may splice their activities and attempt to avoid the sanctions regulations.  Instead, "to the extent" is, in this context, a proxy for "to whatever extent" or "to any extent" and includes rather than excludes subjects from the regulations. Without such language, people might argue that they were independent contractors or brokers or that mere occasional or incidental work for the government of Libya would exempt them from coverage.  OFAC's interpretation of the language to broadly cover "any person" who has acted or purported to act on behalf of the government of Libya is therefore a reasonable interpretation of its

6

regulation, and even an equally reasonable interpretation by Paradissiotis would not prevail.

The spuriousness of appellant's interpretation appears from the facts of his case. He has been for many years president and a director of two companies that are controlled by the government of Libya. In these positions and others he has pursued Libya's efforts to expand its presence in European markets. Yet by semantic casuistry Paradissiotis asserts that even his activities must be analyzed case-by-case for their coverage by the Libyan sanction regulations. So applied, the regulations could hardly be enforced.

This argument also confuses the definitions provision, where the phrase "to the extent" appears, with the "prohibitions" section, which contains no such limitation. See 31 C.F.R. § 550.209. In the prohibition section, the regulation states that "no property or interests in property of the government of Libya that are in the United States . . . may be transferred, paid, exported, withdrawn or otherwise dealt in" without a specific license. 31 C.F.R. § 550.209(a). As the district court put it,

> Once a person falls within the definition of the government of Libya, any transaction by that person is prohibited. The language of the regulations does not prohibit transactions only "to the extent" that they benefit the Government of Libya. There is no exception for transactions by a person, who falls within the definition of the "Government of Libya," to the extent that a transaction is characterized as in a "personal sphere."

7

For these reasons, OFAC's interpretation of its own regulation is not plainly inconsistent with the regulatory language, nor is it unreasonable, and in fact it represents the only practical interpretation.

Paradissiotis's additional contention, that the Libyan sanction regulations are inconsistent with governing law and executive orders, is weak. The IEEPA grants the President sweeping powers to prohibit "any person['s]" participation in any transaction involving or the exercise of any right, power, or privilege with respect to any "property in which any foreign country . . . has any interest." See 50 U.S.C. § 1702(a)(1)(B). Pursuant to this broad authority, President Reagan authorized a freeze on all property and interests in property of the GOL and its agencies, controlled entities and instrumentalities that are in the United States or hereafter come into the possession or control of U.S. persons. See Executive Order No. 12544, 51 Fed. Reg. 1235. The Secretary of Treasury, through OFAC, promulgated such regulations, "including regulations prescribing definitions," as necessary to exercise the President's authority under the Act. See 50 U.S.C. § 1704. OFAC was authorized to include individuals like Paradissiotis within its definition of instrumentalities in order to serve the purposes of the Executive Orders. See also Consarc Corp., 71 F.3d at 913-14 (all payments by government of Iraq -- not merely those in which Iraq maintains an interest -- blocked by analogous OFAC sanctions). In matters like this, which involve

8

foreign policy and national security, we are particularly obliged to defer to the discretion of executive agencies interpreting their governing law and regulations. See Haig v. Agee, 453 U.S. 280, 292 (1981); see also Miranda v. Secretary of Treasury, 766 F.2d 1, 3-4 (1st Cir. 1985).

Paradissiotis raises several constitutional challenges to OFAC's actions. It is not clear whether, as a foreign national residing outside the U.S., he can assert these claims, but we shall assume arguendo that he can.

First, he complains that his placement on the SDN list constituted a bill of attainder. No circuit court has yet held that the bill of attainder clause, U.S. Const. art. I, § 9, cl. 3, applies to regulations promulgated by an executive agency. See Walmer v. United States Dep't of Defense, 52 F.3d 851, 855 (10th Cir. 1995) ("The bulk of authority suggests that the constitutional prohibition against bills of attainder applies to legislative acts, not to regulatory actions of administrative agencies."); Korte v. Office of Personnel Management, 797 F.2d 967, 972 (Fed. Cir. 1986); Marshall v. Sawyer, 365 F.2d 105, 111 (9th Cir. 1966). Even if we were inclined to apply the bill of attainder clause to OFAC's list of Specially Designated Nationals, however, the regulatory list would not be invalid.

A bill of attainder must "inflict[] punishment on an identified individual without provision of a judicial trial." SBC Communications, Inc. v. FCC, 154 F.3d 226, 233 (5th Cir. 1998).

9

OFAC's list does not inflict such punishment.  See id. at 233-35.
The list identifies a group of individuals that OFAC has deemed
subject to various sanction programs and whose business activities
with U.S. persons will be regulated as long as they are agents of
a target country.  Even if he were not on the list, Paradissiotis
would still be subject to the generally applicable prohibitions of
the Libyan sanction regulations, as OFAC ultimately determined that
he fell within the regulatory definition of the GOL.  The mere
publication of his name in the list did not evince an "intent to
punish." Selective Serv. Sys. v. Minnesota Pub. Interest Research
Group, 468 U.S. 841, 851, 104 S. Ct. 3348, 3355 (1984).  The SDN
list reported Paradissiotis's status under the regulations; no
concomitant burden was imposed based solely on his inclusion in the
SDN list.  The compilation does not violate the Constitution.

Second, Paradissiotis argues that OFAC's application of
the Libyan sanction regulations is void for vagueness and does not
provide adequate notice to the public of prohibited conduct.
Whatever might be true in marginal cases, this challenge is
meaningless for Paradissiotis.  He knows he is an SDN and is part
of the "Government of Libya" and is clearly aware of the
consequences of that status.

Third, although Paradissiotis persists in contesting
OFAC's regulations requiring the issuance of a license before a SDN
may retain legal counsel, he lacks standing.  OFAC granted his only
request for a license to obtain counsel, and Paradissiotis has not

10

shown that he will be deprived of legal services in the future based on the regulations.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992) (unless plaintiff can show evidence of concrete, actual or imminent future injury, courts lack standing to consider claims).  The district court properly rejected the Sixth Amendment claim for lack of standing.

Fourth, Paradissiotis alleged a Fifth Amendment takings claim because, he asserted, the Coastal Stock options expired in March 1997 while his access to them remained frustrated by OFAC, and he was not compensated.  The district court held against him, but it was without jurisdiction.  Under the Tucker Act, 28 U.S.C. §§ 1346(a)(2) and 1491(a)(1), the Court of Federal Claims has exclusive jurisdiction for all claims for monetary relief against the United States greater than $10,000.  Paradissiotis's monetary damages exceed this jurisdictional amount.  Consequently, we must vacate this portion of the district court's judgment.  See Wilkerson v. United States, 67 F.3d 112, 118 (5th Cir. 1995); Amoco Prod. Co. v. Hodel, 815 F.2d 352, 358-59 (5th Cir. 1987).

11

### III.  CONCLUSION

For the foregoing reasons, we <u>AFFIRM</u> the district court's grant of summary judgment on all points except the takings claim, and <u>VACATE</u> with respect to the takings claim.

<u>AFFIRMED</u> in part, <u>VACATED</u> in part.